TRADE BANNER LINE, INC.,
Plaintiff-Appellee,

v.

CARIBBEAN STEAMSHIP CO., S. A., Defendant,

Reynolds Metals Co.,
Defendant-Appellant.

No. 74–4181
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Sept. 24, 1975.

* Rule 18, 5th Cir., see *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al.*, 5th Cir. 1970, 431 F.2d 409, Part I.

Robert M. Contois, Jr., New Orleans, La., William H. Keys, Corpus Christi, Tex., for Reynolds Metals Co.

J. Michael Mahaffey, Corpus Christi, Tex., for plaintiff-appellee.

Joseph Newton, Houston, Tex., for Caribbean S. S. Co.

Before BROWN, Chief Judge, and GODBOLD and GEE, Circuit Judges.

PER CURIAM:

The facts of this case are set forth in detail in the opinion of the district court, *Trade & Transport, Inc. v. Caribbean Steamship Co.*, 384 F.Supp. 782 (S.D.Tex. 1974) and will not be retold here.

As we understand the ruling of the district court, Reynolds Metals Company's liability as wharfinger is grounded on one or more of three possible bases. The first is that Reynolds breached its duty to supply the M/V TRADE CARRIER with a safe berth by failing to warn her captain of the shallow water which lay to the west of the bauxite dock where she was moored. The second is that the same duty was breached when Reynolds recommended to the captain that TRADE CARRIER be moved from the Alumina dock to the bauxite pier because ". . . the fittings on the bauxite pier were not entirely adequate to hold the vessel in the storm." 384 F.Supp. at 787. The third is that Reynolds ". . . had some fault with regard to the securing of the vessel to the bauxite pier." 384 F.Supp. at 787. Since we find liability grounded on any of these bases unfounded, we reverse and render judgment in favor of Reynolds.

It is well settled that a wharfinger is not the guarantor of the safety of a ship coming to his wharf. He is, however, under a duty to exercise reasonable diligence to furnish a safe berth and to avoid damage to the vessel. This includes the duty to ascertain the condition of the berth, to make it safe or warn the ship of any hidden hazard or deficiency known to the wharfinger or which, in the exercise of reasonable care and inspection, should be known to him and not reasonably known to the shipowner. *Smith v. Burnett*, 173 U.S. 430, 19 S.Ct. 442, 43 L.Ed.2d 756 (1899); *Grace Line, Inc. v. Todd Shipyards Corp.*, 500 F.2d 361, 365 (9th Cir. 1974); *Medomsley Steam Shipping Co. v. Elizabeth River Terminals*, 354 F.2d 476, 480 (4th Cir. 1966); cf. *In re Dearborn Marine Services, Inc.*, 499 F.2d 263, 278 (5th Cir. 1974). But, there is no duty on the part of a wharfinger to provide a berth with safe surroundings (other than an entrance and exit) or to warn that hazards exist in its vicinity, since it is common knowledge that a ship severed from its berth, adrift and not under command, runs a substantial risk of grounding. As to underwater obstructions, the berth which Reynolds provided was hazard-free so long as TRADE CARRIER remained within it; this satisfied the wharfinger's duty. That there was shallow water to the west is immaterial to the question of whether Reynolds provided a safe berth or warned of hidden hazards of the underwater obstruction variety.

Although the trial court, as factfinder, concluded that the fittings of the bauxite pier were not entirely adequate, there was no evidence to support this finding. Each fitting utilized held throughout the storm. TRADE CARRIER was cast adrift either because her lines parted or because they slipped loose. The parting of the lines, which were provided by TRADE CARRIER,

certainly cannot be blamed upon the wharfinger. Although there is authority that a wharfinger is bound to provide fittings which will not fail, e. g., *City Compress & Warehouse Co. v. United States,* 190 F.2d 699, 701 (4th Cir. 1951), even in a severe storm, *see Medomsley Steam Shipping Co. v. Elizabeth River Terminals, supra,* there is none which holds that he must provide fittings from which ropes will not slip loose in a 138-mile per hour hurricane, especially when, as the court found, ". . . the lines could have been, at least some of them, more securely fastened than they were, [and] [t]here is no way to be sure that, had the lines been more securely fastened to the fittings by the . . . [ship's] crew, the vessel would not have been torn from its moorings anyway."

■ The fact that the fittings at the bauxite pier might have been more nearly adequate had the uprights of the double bitts been at an angle or had the double bitts on its east side been unobstructed does not alter the situation. All details of the mooring of TRADE CARRIER were controlled by the ship's crew under the supervision of her master. Under the circumstances, responsibility for the mooring of the vessel lay with him. *City Compress & Warehouse Co. v. United States, supra,* 190 F.2d at 700. The number, types and locations of the fittings were apparent. No fitting was less sound than it appeared to be. It was with full knowledge of the fittings available and the impending hurricane that the master chose to moor where and how he did. Reynolds Metals, as wharfinger, cannot be made to bear responsibility for his decision.

■ Since it is the master, when present and supervising, and not a wharfinger—absent some type of contractual commitment not present here—who is responsible for the mooring of a ship, it was error to hold that Reynolds had some fault with regard to the securing of the TRADE CARRIER prior to her misadventure. The judgment is correct excepting in this respect.

Affirmed in part, and in part reversed.