Billie G. PURDY and Ella
Mae Purdy, Plaintiffs,

v.

BELCHER REFINING COMPANY,
a Delaware Corporation,
Defendants.

Civ. A. No. 89–0312–RV.

United States District Court,
S.D. Alabama, S.D.

Jan. 27, 1992.

**1560**

Vincent J. Castigliola, Jr., Pascagoula, Miss. and J.F. Janecky, Mobile, Ala., for plaintiffs.

Walter M. Cook, Jr., William E. Shreve, Jr., Allen E. Graham, Marion A. Quina and Joseph J. Minus, Mobile, Ala., for defendants.

JOHN R. BROWN, Circuit Judge [*].

Pending is the motion by Billie G. Purdy that the court enter judgment for the plaintiffs on the court's findings of fact. The defendant's response is also treated as a motion for dismissal for insufficient evidence or failure to state a claim. F.R.Civ.P. 12(b)(6). At the conclusion of all the evidence and extended oral arguments, the court from the Bench announced detailed findings of fact[1] and some conclusions of law, specifically reserving others while awaiting briefs. The findings of fact are incorporated in this opinion as though set out at length.

### In the Beginning

This is a maritime tort case involving an accident, which occurred on navigable waters. The accident of April 28, 1988, may be briefly stated. Purdy, 57 years old, with a work expectancy of 7.3 years and a life expectancy of 19.1 years at the time of trial, was severely injured when he fell off the ladder leading from the dock of Belcher's Refinery to the deck of a barge then being loaded with Belcher's petroleum products. He was present as an inspector of W.S. Seybolt and Company, recognized independent petroleum inspectors, to obtain barge tank readings and samples of the cargo for laboratory testing.

The immediate cause of the accident was in much dispute. Indeed, Purdy's various explanations left a lot in doubt. Was it Belcher's ladder? Was it furnished by Belcher for Purdy's use? Had the ladder been left by some prior barge? Had the ladder been used previously with no apparent defect? Did the ladder break? All of these doubts were resolved by the court: whether or not owned by Belcher, it was made available for egress and ingress to the loading barge. Without warning, one foot[2] broke leaving a section approximately 6 inches long.

### Is Dock Owner Liable?

█ To the court, it appears that initially treating Belcher's objections to liability is most efficient. Purdy was engaged in mar-

---

[*] Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

1. These findings continue without modification or amendment. They are supplemented (not supplanted) by the findings of fact in this opinion.

The announced findings of fact, as supplemented herein, and conclusions of law shall constitute the full findings of fact and conclusions of law.

2. Actually it was not the foot. The ladder had been rigged in reverse fashion, top at bottom, vice-versa.

itime employment and thus was covered by the Longshoremen's and Harbor Workers' Compensation Act (LHWCA). 33 U.S.C. § 901 *et seq.* Belcher's duty was to exercise due care to have the premises and facilities necessarily used in a reasonably safe condition for use by the employees of such an independent contractor. *Melerine v. Avondale Shipyards, Inc.,* 659 F.2d 706, 708 (5th Cir. Unit A Oct. 1981). *Peters v. Titan Nav. Co.,* 857 F.2d 1342, 1344 (9th Cir.1988). This duty included the exercise of due care in furnishing a reasonably safe means of ingress and egress from the dock to the deck of the barge, the freeboard of which was subject to continuous change. To this Belcher rejoins that the duty of affording egress to and from the dock is on the shipowner, not the dock owner (wharfinger). *See National Marine Serv., Inc. v. Gulf Oil Co.,* 433 F.Supp. 913 (E.D.La. 1977), *aff'd,* 608 F.2d 522 (5th Cir.1979);[3] *Daniels v. Florida Power and Light Co.,* 317 F.2d 41 (5th Cir.1963).

This case does not involve the access to the oil dock by a member of the crew of a vessel or tugboat. Here, the presence of the Seybolt inspector to determine quantity and specification of the oil was a matter in which Belcher had a direct, significant and commercial interest in the sale and transportation of its products. *See Transoil (Jersey) Ltd. v. Belcher Oil Co.,* 950 F.2d 1115 (5th Cir.1992). Not only was it in Belcher's direct commercial interest, it was, as the court so found, a customary practice for Belcher to make ladders available.

After the ladder failed and Purdy was thrown to the weather deck, he gropingly found a missing piece of the ladder. Ex. 24. The exhibit shows that the break was in the area around the rung as it was fastened into the upright leg of the ladder. From the structure of the aluminum ladder, Purdy's weight—not over 170 lbs. as weighed in the Judge's eye—could not have caused the piece of the ladder to break off. The fracture on the actual exhibit was in the vicinity of sort of a twisting bend in the leg of the ladder. The fracture having occurred just as Purdy's weight was put on the ladder, especially when augmented by the maritime accepted doctrine of *Res Ipsa Loquitur,*[4] was sufficient to justify the inference drawn by the court in its findings that the break was occasioned in part by a previous damage to the ladder in its continued use which was compounded by the lack of adequate inspection before being used or furnished for use.[5] The ladder was more or less made fast at the dock so that it would hang perpendicular when not footed in place on a barge. This obvious fact (reflected by all of the photographic exhibits) means that the ladder, while so hanging, was subject to crushing damage as adjacent barges moved in or out or up or down with changes in the draft. Huggins, the highest person on the shift, testified that the tankerperson[6] (Margaret Boone) probably should have noticed it as she had an obligation to inspect the equipment to make sure it was safe. He acknowledged that unless properly adjusted, the ladder could be crushed by the adjacent barge. To this must be added that Huggins, the top man for Belcher at the time, recorded faithfully what the young tankerperson reporting about Purdy's injuries solemnly wrote: "Inspector on gas oil slipped when leg on ladder at dock *broke,* skinned his leg

3. The frequent use of Fifth Circuit opinions is consistent with the Eleventh Circuit's holding in *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) adopting as its own Fifth Circuit's previous precedent.

4. *Kenedy v. Henderscheid,* 490 F.2d 85 (5th Cir. 1973); *Cie Des Messageries Maritimes v. Tawes,* 205 F.2d 5, 7 (5th Cir.), *cert. denied,* 346 U.S. 858, 74 S.Ct. 69, 98 L.Ed. 371 (1953); *Geotechnical Corp. v. Pure Oil Co.,* 196 F.2d 199, 205 (5th Cir.), *cert. denied,* 344 U.S. 874, 73 S.Ct. 165, 97 L.Ed. 676 (1952).

5. The height (or more accurately the depth) of Belcher's indifference to safety requirements of ladders being furnished by it is shown by the fact that despite the log entry specifically reflecting that the ladder broke, the written report alerted no one in management or below either to look at, examine or save the broken ladder, the ladder with the foot broken off; and indeed, months later, when an effort was made to find the broken ladder, Belcher's persons in charge had to admit that it had just been thrown away as junk.

6. As a young woman, she could hardly be a tanker *man.*

and knee up, Bill Purdy." (Emphasis added.)

That Belcher's ladder broke under usual operating conditions and from inadequate examination, inspection and testing of the ladder before use demonstrates a failure to exercise reasonable care for Purdy's safe use of the ladder to get to and from the barge whose cargo he was inspecting.

### The Purdys' Damages

This brings us to the allowance of Purdy's damages. Some were fixed in the oral pronouncements of the court's findings. Others were specifically deferred pending briefs which have now been considered. Much had to do with base earnings and pecuniary losses.

The Purdys agree that from base earnings federal, state and social security taxes amounting to 16.3% should be deducted. This makes the monthly earnings as follows:

| | |
|---|---|
| Base Earnings | $1,950.00 |
| Federal, State & Soc. Sec. Taxes 16.3 | − $ 317.85 |
| Net Allowed: | $1,632.15 |
| To be Added in: | |
| Health Insurance | $ 309.23 |
| Life Insurance | $ 19.00 |
| Auto Insurance | $ 25.00 |
| Total: | $1,985.38 |

The court continues its disallowance of telephone service which will now have to be paid by the employee in the future ($27.00) and gasoline ($100.00), which Purdy claimed he got from allowed use of samples taken for analysis. These are simply too remote.

### Past Medical Damages

■ The court allows with 8% interest the amounts actually paid totalling $25,-070.88. In an action for personal injuries, allowance for actual medical bills would be without question. However, Belcher correctly asserts that these were not paid by Purdy; they were paid by the LHWCA carrier. However, the court must reckon with the subrogated recovery rights of the LHWCA carrier since the carrier is entitled

7. McCloskey's deposition, p. 17, line 3–5.

to recover all of its costs, and if Purdy is not nominally allowed to recover medical expenses paid, he will suffer loss of them in calculating the subrogation recovery. Subrogation recovery is from the total recovery, not from particular items as recovered. *Haynes v. Rederi A/S Aladdin*, 362 F.2d 345, 350 (5th Cir.1966), *cert. denied*, 385 U.S. 1020, 87 S.Ct. 731, 17 L.Ed.2d 557 (1967); *Hayden v. Kerr–McGee*, 787 F.2d 1000, 1003 (5th Cir.1986).

### TAPE 2

### Future Medical Expenses

■ By averaging the total medical bills incurred in the past, Purdy requests that, for the future, the average sum of $354.20 be allowed per month with his 19.5 years life expectancy, discounted at 3%, totalling $62,556.20. Determining this item depends on the testimony of Dr. McCloskey, whose opinions have been accepted by Belcher. Undoubtedly, some additional medical expenses will be incurred. But there is no basis for awarding what amounts to a health benefit of $354.00 per month. Additional medical expenses directly relating will undoubtedly occur. Doctor McCloskey testified that Bill Purdy reached maximum medical recovery as of January 1990, but that Purdy will continue to receive pain management treatment for the rest of his life. As to Purdy's condition, "actually his complaints have been the worst they have been since surgery, pain in his low back and pain going down both legs." [7] With the high cost of drugs and the liability for such expenditures solely on Purdy, the court feels that a monthly award of $200.00 will be fairly adequate.

### Wages Losses To Date

Since the date of the accident three and a half years ago, Purdy has not been able to engage in gainful employment. The court has found that Purdy's wages and compensable fringe benefits at the time of his accident total $1,985.38. This should be multiplied by 40 months with interest at

the rate of 8% for each monthly install-
ment.

### Future Wage Losses

But for the accident, Purdy would proba-
bly have worked until he was 65 years old.
At the date of trial, his remaining work life
expectancy was 7 years and 3 months.
Purdy is adjudged due $1,985.38 per month
for these 84 months, discounted 3% annual-
ly.

### Discount Rate

■ The 3% discount rate, as fixed, is
within the 1 to 3% below-market-discount
rate recognized by the Fifth Circuit. *Cul-
ver v. Slater Boat Co.,* 722 F.2d 114, 122
(5th Cir.1983 en banc); *Jones and Laugh-
lin Steel Corp. v. Pfeifer,* 462 U.S. 523,
548, 103 S.Ct. 2541, 2556, 76 L.Ed.2d 768,
790 (1983). The Eleventh Circuit found a
"2% discount rate acceptable." *Self v.
Great Lakes Dredge & Dock Co.,* 832 F.2d
1540, 1552 (11th Cir.1987) (en banc). As
the court did in *Culver,* the district court in
*Martinez v. Puerto Rico Marine Manage-
ment, Inc.,* 755 F.Supp. 1001, 1007
(S.D.Ala.1990), followed the below-market-
discount method stating, "In the Eleventh
Circuit, the sole approved method for deter-
mining loss-of-future-earnings awards is
the below-market-discount method." Sub-
sequent to *Pfeifer, supra,* the Supreme
Court has held that, in effect, one of three
methods utilized by the trial court shall be
applied by the appellate court if sufficient-
ly supported, thus, overruling the *Culver*
mandatory requirement of a below-market-
discount method. *Monessen Southwestern
Ry. Co. v. Morgan,* 486 U.S. 330, 108 S.Ct.
1837, 100 L.Ed.2d 349 (1988). This court
determines that a below-market-discount
rate of 3% is fair and reasonable and
should be applied in all discount situations
of the damages awarded to Purdy.

### Pain and the Suffering

■ The court has heretofore found that
Purdy's damages for pain, suffering and
mental anguish should be damages of $10,-
000 per year for his life expectancy. From
the date of the accident until the date of

the trial, it amounts to $37,888.81, with
interest at 8%. For pain and suffering for
his remaining life expectancy, discounted
at 3%, it amounts to $147,495.17.

However, Purdy conceded that on the
binding pre-Eleventh Circuit law, the Fifth
Circuit has held that awards for future
pain and suffering should not be subject to
present value. *O'Byrne v. St. Louis
Southwestern Ry. Co.,* 632 F.2d 1285, 1286
(5th Cir.1980). This has been the rule in
the Fifth Circuit for 20 years; *Texas and
Pacific Ry. Co. v. Buckles,* 232 F.2d 257
(5th Cir.), *cert. denied,* 351 U.S. 984, 76
S.Ct. 1052, 100 L.Ed. 1498 (1956); *Texas
and Pacific Railway Co. v. Buckles, Jr.,*
232 F.2d 257, 264 (5th Cir.), *cert. denied,*
351 U.S. 984, 76 S.Ct. 1052, 100 L.Ed. 1498
(1956).

This Judge is bound by these decisions
when in the Fifth Circuit, and is also bound
when in the Eleventh Circuit, by virtue of
the Eleventh Circuit adopting Fifth Circuit
law as precedent. *See* n. 3. With this
precedent being so positive, there is no
escape from applying it. Thus, we reject
the Second Circuit's decision in *Chiarello v.
Domenico Bus Serv., Inc.,* 542 F.2d 883 (2d
Cir.1976).

If there is an appeal—which seems al-
most certain—the Court of Appeals for the
Eleventh Circuit can determine whether to
follow this Fifth Circuit law. If that tran-
spires, the total awarded for future pain
and suffering will be subject to a 3% dis-
count.

### Household Services

■ The court first disallowed the
claim for the value of Purdy's household
services based on 20 hours a day and
$10.00 per hour. This claim is based pri-
marily on Purdy's testimony, which the
court credits, that he has been a very in-
dustrious person in his off-duty hours
around his home, including such things as
major carpentry work and work on his car,
etc. The court continues in its belief that
the method of calculation is not correct:
i.e., $20.00 per hour—what it would cost to
obtain such services from the outside. The
court does, however, reconsider its com-

plete denial and awards $1,000.00 per year for value of household services Purdy can no longer perform. This is to be in addition to the award for pain, suffering and mental anguish. *See DeCenteno v. Gulf Fleet Crews, Inc.*, 798 F.2d 138, 142 (5th Cir.1986); *Hernandez v. M/V RAJAAN*, 841 F.2d 582, 588–89 (5th Cir.1988). As this does not amount to a pecuniary out-of-pocket loss, the award will stand as one requiring no discount as in the case of pain and suffering.

### Loss of Consortium

The court has found that Mrs. Purdy suffered damages for loss of consortium at a rate of $2,000.00 per year. Past losses amount to $6,666.67 plus interest of $911.13. Future loss of over 19.5 years discounted at 3% amounts to $29,499.74. All totalled, her consortium damages amount to $37,077.54.

### Prejudgment Interest

■ Purdy claims prejudgment interest on some of these damage items and specifically as to medical expenses through the date of trial. In admiralty, prejudgment interest is allowed except in very rare circumstances. *International Paint Co. v. M/V MISSION VIKING*, 637 F.2d 382, 386 (5th Cir. Unit B Feb. 1981); *Socony Mobil Oil Co. v. Tex. Coastal & Intern.*, 559 F.2d 1008, 1014 (5th Cir.1977). Of course, a prejudgment interest runs from the date each item was incurred. *Randolph v. Laeisz*, 896 F.2d 964, 969 (5th Cir.1990); *Noritake Co. v. M/V HELLENIC CHAMPION*, 627 F.2d 724, 728 (5th Cir. Unit A Oct. 1980). Since the compensation carrier, as subrogee, will likely assert it is entitled to prejudgment interest, a similar amount must be included in Purdy's recovery against Belcher just as in the case of pre-trial medical expenses. The court does not regard the asserted contradictory nature of Purdy's various reports or the change, if any, in Purdy's deposition testimony as sufficient to overcome the usual admiralty rule of prejudgment interest barring extraordinary circumstances.

### Price's Post–Trial Deposition

■ On the trial, the court itself asked Price several very specific questions. Price's statement was that he was 10–12 feet from the water's edge. On that testimony, the court found that Price could not have seen the foot of the ladder or the weather deck of the barge. Stationed 10–12 feet from the edge of the dock, his sight of the barge 12 feet below the level of the dock was completely obscured.

After submission, and the court's announcement of its findings of fact, Belcher moved the court to reopen the case to permit the witness, Price, to clarify his testimony. The court granted this in part by allowing the post-submission deposition of the witness, Price. This was done, the deposition was received and filed and considered.

To begin with, the court disagrees with Belcher that Price was a disinterested, independent witness with a credibility attached to such status. Price, however, was an employee of Petroleum Services, Inc., a contract-labor supplier. Under these circumstances, Price was, in effect, an employee of Belcher with whatever taint of partiality as would be assigned to a direct employee.

The court credits the deposition testimony, that in speaking of 12 feet from the water's edge, he was referring to the level of the water 10–12 feet below the top level of the dock.

But the court makes a credibility judgment that it cannot accept Price's testimony as to the occurrence of the accident. Add to this is the fact that Price's credibility was substantially lessened by concessions made by him on cross-examination. Perhaps trivial is the difference between that and tankerperson Boone concerning pulling up the ladder after the occurrence. Indeed, Price insisted that Boone was not present for about 10 minutes. The court credits Boone's testimony that the ladder was pulled up onto the dock and inspected after the accident and saw the foot of the ladder was missing. She reported this to Huggins, the ship's supervisor, who made the critical entry in his log.

*Calculation of Damages*

The court has struggled to be sure that it has determined the various items of damages suffered by the Purdys. Because the court is not in a position accurately to produce the final figures, the court thinks it preferable to leave this to counsel. The court directs that counsel collaborate in the utmost good faith in determining the dollar amounts of each of the items as determined by the court. This then could be incorporated in the final judgment—which hopefully will be approved as to form—which the court requires Purdy's counsel to prepare. In the judgment, the table of damages as awarded should be substantially in the form of the tables set out in each counsel's memoranda.[8] To avoid further delay, the proposed final judgment should be submitted to the court within 14 days after the filing of this opinion in the Clerk's Office. Exceptions or objections, either as to the amount or allowance of any item, should be submitted by separate memoranda at the time the proposed final judgment is filed with the court.

The court states positively that this is *NOT* a final judgment. The date of the final judgment will be that of the final, formal judgment plus time for transmission between Houston, Texas and Mobile, Alabama.

The result is that the motion of Belcher to dismiss the case, F.R.Civ.P. 41(b), 12(b)(6) is denied. Plaintiff Purdy's motion to enter judgment for the plaintiffs is granted.[9]

Defendant's Motion DENIED.

Plaintiff's Motion GRANTED.

---

8. (Purdy's initial brief memoranda, p. 30, Belcher's memoranda, p. 17, and Purdy's response to Defendant's opposition, p. 9.)

9. As a tagend matter overlooked above, the court denies Belcher's request for a set-off in determining Purdy's loss of future income. No or insufficient proof was offered as to (i) availability of alternative work, (ii) its duration, and (iii) rate of compensation.