United States Court of Appeals,

Fifth Circuit.

No. 92-4661.

FLORIDA FUELS, INC., et al., Plaintiffs,

Florida Fuels, Inc., Plaintiff-Appellant,

v.

CITGO PETROLEUM CORP., et al., Defendants,

Citgo Petroleum Corp., Defendant-Appellee.

Elaine Trosclair AUTHEMENT, Individually and as Administratrix & Legal Tutrix o/b/o Honey L. Authement, etc. and Carl J. Authement, Sr., Plaintiffs-Appellants,

v.

FLORIDA FUELS, INC., Defendant-Appellant

v.

CITGO PETROLEUM CORP., Defendant-Appellee.

Nov. 9, 1993.

Appeal from the United States District Court for the Western District of Louisiana.

Before JOLLY and DAVIS, Circuit Judges, and BRAMLETTE,[1] District Judge.

BRAMLETTE, District Judge:

Plaintiffs-Appellants, deceased crew member's family and vessel owner, appeal the lower court's grant of summary judgment in favor of dock owner. The lower court found that the dock owner owed no duty to the vessel crew member to provide a means of access between the dock and the vessel, and owed no duty to aid in the mooring of the vessel. We affirm.

On April 10, 1990, the barge OSPREY, assisted by the tugboat TODD RICK, both owned and operated by Florida Fuels, Inc. (Florida Fuels), berthed at a dock owned and operated by Citgo Petroleum Corp. (Citgo), in order to pick up fuel. On board the TODD RICK was Carl Authement, Jr. (Authement), employed by Florida Fuels as a deckhand. The Citgo facility consisted of four

---

[1]District Judge of the Southern District of Mississippi, sitting by designation.

docks: "A," "B," "C," and "D." After the OSPREY arrived at Dock D, Citgo requested that the barge be brought to Dock A for loading the fuel.

Dock D was equipped with a walkway ingress/egress system. Dock A had no such system. There were aluminum ladders attached to Dock A on a pivot, but these were too short to serve as a means of ingress and egress between the dock and the OSPREY. The OSPREY had its own aluminum extension ladder, which was used by the TODD RICK crew members as they moored the barge to the dock.

After the OSPREY moved to Dock A, another barge arrived at the facility, and Citgo asked that the OSPREY be moved to the north end of Dock A. After this was done, Citgo again requested the OSPREY to move, this time some fifty feet further down Dock A. At this point, Authement left the deck of the OSPREY, using the aluminum extension ladder, and proceeded to the dock to help secure the barge to the dock. After the barge was secured, Authement was ascending the ladder to return to the deck of the barge when he fell, struck his head on the pier, and drowned.

Authement's parents and his five minor children filed a maritime tort action against Florida Fuels, and later amended their petition to add Citgo as a defendant. Citgo removed the action to federal court. Florida Fuels and the Authements then reached a settlement, but the settlement did not include damages for loss of society sustained by family members. The Authements and Florida Fuels agreed to pursue Citgo jointly for the recovery of the remainder of damages sustained, and agreed to share equally any recovery made. Florida Fuels filed a separate suit against Citgo for indemnity/contribution, and on motion of Citgo the actions were consolidated.

Citgo filed a motion for summary judgment on January 24, 1992. The magistrate judge recommended that summary judgment be granted. After objections were filed, the district court reviewed the matter *de novo* and reached the same conclusion. On June 9, 1992, summary judgment was granted in favor of Citgo, adopting the magistrate judge's report and recommendation. Florida Fuels and the Authements appeal. The issues on appeal are the same that were before the lower court on the motion for summary judgment: (1) Did Citgo owe a duty to Authement to provide a means of access between the dock and the vessel; and (2) Did Citgo owe a duty to aid in the mooring of

the vessel?

"We review a district court's grant of summary judgment *de novo,* resolving any disputed issues in favor of the non-movant, to determine whether the record, as it exists, shows that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Palmer v. Fayard Moving & Transp. Corp.,* 930 F.2d 437, 438 (5th Cir.1991). We also independently review the district court's conclusions of law. *Brister v. A.W.I., Inc.,* 946 F.2d 350, 354 (5th Cir.1991).

1.

This case involves an intersection between state and federal law. In *Victory Carriers, Inc. v. Law,* 404 U.S. 202, 207, 92 S.Ct. 418, 422, 30 L.Ed.2d 383 (1971), the Supreme Court observed that, traditionally, "[t]he gangplank has served as a rough dividing line between the state and maritime regimes." Piers and docks are deemed extensions of land, *id.,* 404 U.S. at 206-07, 92 S.Ct. at 422, while the means of access between a dock and a vessel is considered an "appurtenance" of the vessel. *Romero Reyes v. Marine Enterprises, Inc.,* 494 F.2d 866 (1st Cir.1974).

It is well-established that maritime law encompasses the gangway. *The Admiral Peoples,* 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633 (1935); *Brady v. Roosevelt S.S. Co.,* 317 U.S. 575, 63 S.Ct. 425, 87 L.Ed. 471 (1943); *Southern Pacific Co. v. Jensen,* 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917); *Tullis v. Fidelity & Cas. Co.,* 397 F.2d 22 (5th Cir.1968); *O'Keeffe v. Atlantic Stevedoring Co.,* 354 F.2d 48 (5th Cir.1965).

It is also well-established that a vessel owner has a "fundamental duty" to provide its crew members with a reasonably safe means of boarding and departing from the vessel. *Massey v. Williams-McWilliams, Inc.,* 414 F.2d 675, 679 (5th Cir.1969), *cert. denied,* 396 U.S. 1037, 90 S.Ct. 682, 24 L.Ed.2d 681 (1970); *Superior Oil Co. v. Trahan,* 322 F.2d 234, 235 (5th Cir.1963). The question posed in the present case is whether a dock owner has a similar duty to crew members of a vessel using its facility.

The vessel owner's duty to provide a reasonably safe means of access arises from the doctrine of "seaworthiness." Under general maritime law, a vessel owner has "an absolute nondelegable duty

to provide a seaworthy vessel" to crew members. *Brister v. A.W.I. Inc.,* 946 F.2d 350, 355 (5th Cir.1991). Unseaworthiness is "predicated without regard to fault or the use of due care." *Id.,* quoting *Lee v. Pacific Far East Line, Inc.,* 566 F.2d 65, 67 (9th Cir.1977). It is well-settled, however, that the doctrine of "seaworthiness" is not applicable to a dock owner who does not occupy the position of owner or operator of the vessel. *Daniels v. Florida Power & Light Company,* 317 F.2d 41, 44 (5th Cir.), *cert. denied,* 375 U.S. 832, 84 S.Ct. 78, 11 L.Ed.2d 63 (1963); *Baker v. Raymond International, Inc.,* 656 F.2d 173, 181 (5th Cir.1981), *cert. denied,* 456 U.S. 983, 102 S.Ct. 2256, 72 L.Ed.2d 861 (1982).

Absent a maritime status between the parties, a dock owner's duty to crew members of a vessel using the dock is defined by the application of state law, not maritime law. *Wiper v. Great Lakes Engineering Works,* 340 F.2d 727, 730 (6th Cir.), *cert. denied,* 382 U.S. 812, 86 S.Ct. 28, 15 L.Ed.2d 60 (1965). In the present case, there was no maritime status between Citgo and Authement. Louisiana law defines the duty Citgo owes an invitee such as Authement as the duty to provide a wharf or dock which is reasonably safe. *Sons v. New Amsterdam Casualty Company,* 186 So.2d 375, 376 (La.Ct.App. 4th Cir.1966). In addition, La.Civ.Code Ann. art. 2317 (West 1979), provides, in relevant part, that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody." *See Gauthier v. Crosby Marine Service, Inc.,* 752 F.2d 1085, 1088 (5th Cir.1985).

The appellants do not contend that the accident was caused by some substance on the surface of the dock, or by some defect in the dock itself; nor do they contend that the accident was caused by a person for whom Citgo was answerable or that the ladder was in Citgo's custody. Instead, they urge this Court to find that Citgo had a legal duty to provide Authement with a reasonably safe means of boarding and departing from the OSPREY.

The question of whether such a duty exists is to be decided by maritime tort law. In this circuit, the proper standard to be applied in maritime tort cases is "legal cause." *Spinks v. Chevron Oil Co.,* 507 F.2d 216, 222-23 (5th Cir.1975). The elements of legal cause are negligence, a causal

connection between the negligence and the injury, the invasion of a legally protected interest, and lack of a countervailing legally protected interest as a defense to liability. Restatement 2d Torts § 9. "Legally protected interest" encompasses the concept of duty. *Chavez v. Noble Drilling Corp.,* 567 F.2d 287, 289 (5th Cir.1978).

"The doctrine of *Palsgraf v. Long Island R. Co.,* 248 N.Y. 339, 162 N.E. 99 (1928), that an actor is not answerable in tort to a person to whom he owed no duty, was adopted in admiralty in *Sinram v. Pennsylvania R. Co.,* 61 F.2d 767, 770 (2d Cir.1932)." *Spinks,* 507 F.2d at 222, n. 8. "Whether a defendant owes a plaintiff a legal duty is a question of law. Whether a defendant has breached a duty owed is a question of fact." *Chavez,* 567 F.2d at 289.

The appellants ask us to apply the general duty to exercise "reasonable care under the circumstances," citing *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). *Kermarec* involved an injury to a guest of a member of a ship's crew, which occurred when the guest was descending a stairway in order to leave the ship. The Supreme Court applied the "settled principle of maritime law that a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew." However, *Kermarec* does not extend, even by implication, such a duty to a dock owner toward a vessel crew member aboard the vessel or an appurtenance thereto. Furthermore, *Kermarec* was the law when this Court decided *Daniels, supra,* on the basis that "[t]here was no duty on [the dock owner] to supply a ladder in the first place."

Other cases upon which the appellants rely are likewise inapposite. *Bailey v. Texas Co.,* 47 F.2d 153 (2d Cir.1931); *Sims v. Chesapeake & Ohio Railway Co.,* 520 F.2d 556 (6th Cir.1975); and *Oglebay Norton Co. v. CSX Corp.,* 788 F.2d 361 (6th Cir.), *cert. denied,* 479 U.S. 849, 107 S.Ct. 173, 93 L.Ed.2d 109 (1986), all involved unsafe conditions on the dock itself. In *Purdy v. Belcher Refining Co.,* 781 F.Supp. 1559 (S.D.Ala.1992), which did involve an accident on a ladder between the dock and a vessel, the plaintiff was not a vessel crew member, but was instead a petroleum inspector and employee of W.S. Seybolt and Company, an independent contractor. The district court was careful to point out that "[t]his case does not involve the access to the oil dock by a member of

the crew of a vessel or tugboat. Here, the presence of the Seybolt inspector to determine quantity and specification of the oil was a matter in which Belcher [the dock owner] had a direct, significant and commercial interest in the sale and transportation of its products." *Id.* at 1561.

The appellants also urge us to find that Citgo's customary practice of providing means of access at some of its docks creates a duty in this case. It is undisputed that many dock owners provide gangways or other means of access for their own employees, as they are required to do by the OSHA regulations for longshoring, 29 C.F.R. § 1918.1 et seq. (1992). Nonetheless, although custom may be considered as evidence bearing on the question of negligence once a duty is found to exist, custom itself does not create the duty. Custom may help define the standard of care a party must exercise after it has undertaken a duty, but custom alone cannot create a legal relationship between the parties. In this case, the fact that Citgo furnished means of access to vessels at some of its docks does not create a legal duty on the part of Citgo to provide a means of access for the OSPREY's crew members.

Citgo is not without duties to the owner and crew members of a vessel using its dock, but its duties do not include furnishing a means of access to a vessel for its crew members. In *National Marine Service, Inc. v. Gulf Oil Company,* 433 F.Supp. 913 (E.D.La.1977), *aff'd without op.,* 608 F.2d 522 (5th Cir.1979), a seaman was injured while going from his vessel to a dock using a ladder furnished by the vessel owner. As in the present case, the vessel owner and the wharfinger were sued, and the vessel owner filed a cross claim against the wharfinger for indemnification. The district court cited *Sims* which holds that, for indemnification purposes, a vessel owner can look to the implied warranty of workmanlike service which a wharfinger owes a shipowner:

> The nature of the services performed by the wharfinger determines the extent of this warranty.... The implied warranties of a wharfinger relate to the conditions of berths and the removal of dangerous obstructions or giving notice of their existence to vessels about to use the berths.... A wharfinger also owes a duty to furnish a safe means of egress and ingress to berthed ships.

*Sims,* 520 F.2d at 561, as quoted in *National Marine,* 433 F.Supp. at 918.

In *National Marine,* the vessel owner sought to recover damages for the dock owner's "failure to provide a gangway or some safer means of access than the vessel itself supplied." *Id.* However,

the district court, following *Daniels,* found that even under the implied warranty of workmanlike performance, a dock owner does not owe a vessel or its crew members a duty to provide a means of access between the dock and the vessel. The court pointed out that the duty to furnish a safe means of egress and ingress to berthed ships refers to passage over the dock itself, not the means of access connecting the dock to the vessel. *Id.*

There is no duty imposed by maritime law on a dock owner to provide a means of access to a vessel for the vessel's crew members. *Daniels,* 317 F.2d at 42. The only duty, established by Louisiana law in this case, is to provide a dock which is reasonably safe. The appellants would have us reverse the district court on the grounds that since there was a duty, the court should have let the breach of duty issue go to the trier of fact. We find, however, that in this case there is no genuine issue of material fact. The circumstances surrounding the accident are not in dispute. There was no defect in or on the dock itself, nor was the ladder furnished by the dock owner or under its control. These undisputed facts allow us to find as a matter of law that Citgo did not breach its duty to maintain a reasonably safe premises.

Despite arguments of the appellants to the contrary, we find that for purposes of this case the relationship among dock owners, vessel owners and seamen is virtually the same as it was in 1963 when this court heard *Daniels.* That case still constitutes the law of this circuit, and we are not persuaded that it should be otherwise.

2.

The appellants contend that Citgo had a duty to assist Florida Fuels with the mooring of its vessel, and that its failure to do so caused Authement's accident on the theory that he would not have otherwise disembarked. Without addressing the second part of this argument, we find that Citgo owed no such duty.

In *Trade Banner Line, Inc. v. Caribbean S.S. Co., S.A.,* 521 F.2d 229, 230 (5th Cir.1975), this Court discussed a wharfinger's "duty to exercise reasonable diligence to furnish a safe berth." The Court found that it "includes the duty to ascertain the condition of the berth, to make it safe or warn the ship of any hidden hazard or deficiency known to the wharfinger or which, in the exercise

of reasonable care and inspection, should be known to him and not reasonably known to the shipowner." *Id.* The Court further found that "it is the master, when present and supervising, and not a wharfinger—absent some type of contractual commitment not present here—who is responsible for the mooring of a ship." *Id.* at 231. Similarly, "[t]he implied warranties of a wharfinger relate to the conditions of berths and the removal of dangerous obstructions or giving notice of their existence to vessels about to use the berths." *Sims,* 520 F.2d at 561.

There was no duty on the part of Citgo to assist in the mooring of the OSPREY. As a matter of law, Citgo's failure to provide line handlers to assist in mooring cannot be a valid basis for liability under the facts of this case.

The judgment of the district court is AFFIRMED.


W. EUGENE DAVIS, Circuit Judge, dissenting.

Because I would vacate the district court's dismissal and remand this case for trial, I respectfully dissent.

The majority, relying on *Daniels v. Florida Power & Light Co.,* 317 F.2d 41 (5th Cir.1963) and *National Marine Service Inc. v. Gulf Oil Co.,* 433 F.Supp. 913, 919 (E.D.La.1977), concludes that regardless of the facts in any particular case a wharfowner never owes a duty to a crewmember of a vessel to provide safe access from the vessel to the wharf. The majority reads too much into those cases.

In *Daniels,* a deck engineer fell off a ladder while climbing from his barge to a dock; the distance between the barge and the dock was three feet; the ladder led upward from the barge to the dock at an angle of 15 to 20 degrees; the ladder was owned by the dock owner, but put in use by barge employees. Following a trial on the merits, the trier of fact concluded that the wharfowner was not negligent, and we affirmed, saying:

> There was nothing inherently dangerous about the ladder. It was not put in use by Florida Power. There was no duty on Florida Power to supply a ladder in the first place. Even if it be argued that customary use with knowledge of Florida Power imposed some duty, our attention is not called to any theory whereunder a duty was imposed on Florida Power under these facts to supply a ladder that would not slip or one with handrails on it. Furthermore, appellants had used the ladder many times before, and even on the night of the

accident; and such risk or danger, if any, as attached to the use of the ladder was so reasonably apparent as to be a bar under the circumstances.

In *National Marine,* a tug crew member fell as he attempted to walk across his employer's ladder to get from a barge to the defendant's wharf. The barge was level with the dock and the ladder horizontal. Denying the vessel owner's claim for contribution or indemnity against the dock owner, the trier of fact concluded that the dock owner was not negligent. *National Marine,* 433 F.Supp. at 920. In both *Daniels* and *National Marine,* judgment was rendered after a full trial and after the district court found no negligence on the part of the dock owner.

Injuries occurring on gangplanks between a vessel and a wharf are considered maritime torts and are governed by the general maritime law. *Brady v. Roosevelt S.S. Co.,* 317 U.S. 575, 577, 63 S.Ct. 425, 87 L.Ed. 471 (1943); *Tullis v. Fidelity & Ca. Co.,* 397 F.2d 22 (5th Cir.1968). Thus a wharfowner owes a seaman, like any other business invitee on his property, the duty to "exercise reasonable care in all the circumstances." *Compagnie Generale Transatlantique v. Kermarec,* 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959); *Casaceli v. Martech Intern., Inc.,* 774 F.2d 1322, 1328-29 (5th Cir.1985); *Bubla v. Bradshaw,* 795 F.2d 349, 353 (4th Cir.1986); *Quam v. Mobile Oil,* 496 F.Supp. 986, 988 (S.D.N.Y.1978), *aff'd,* 599 F.2d 42 (2d Cir.), *cert. denied,* 444 U.S. 950, 100 S.Ct. 423, 62 L.Ed.2d 321.

Whether, in the exercise of reasonable care, a wharfowner is responsible for furnishing a gangplank or other means of access from the vessel to the wharf depends upon the facts and circumstances of each case. Frequently, the wharfowner is purely passive and does nothing more than provide a location for the vessel to land and take on or discharge cargo. In such a case, the wharfowner does not undertake to provide a gangplank because everyone assumes the vessel will provide its crew with adequate means of egress and ingress. In such a case, the vessel is solely responsible for providing an inadequate gangway.

But that does not mean the wharfowner, in the exercise of reasonable care, *never* is at fault for failing to furnish a gangplank or other access to the wharf. Based on the summary judgment evidence presented in this case, plaintiff presented a genuine issue of material fact regarding the wharfowner's negligence in failing to provide a gangplank.

According to the summary judgment evidence, the barge OSPREY called regularly at the Citgo refinery. At the dock where the barge was usually loaded (dock D), Citgo had a safe gangway available for the crew to use. Citgo knew that the barge OSPREY carried no gangway. Citgo directed the barge OSPREY to Dock "A," which had no ingress/egress system. This was done for Citgo's convenience, to better enable it to handle other ships. Because it had called to load fuel, the barge OSPREY was riding high when it approached the dock; the distance from the dock to the barge's deck exceeded twenty feet. A factfinder could conclude that by failing to provide a gangway for the barge OSPREY, Citgo deviated from its established custom and practice of providing a gangway to this vessel and similar vessels. Under these circumstances, a factfinder could conclude that Citgo was negligent in directing this vessel to dock D where no gangway was provided when it knew the barge in reliance on an established custom did not have a means of access to the dock.

For the reasons stated above, I would vacate the summary judgment and remand this case for trial.