JiLANDRIEU, Judge.
Russell Nelton Sr. appeals the trial court’s dismissal of his lawsuit against his employer, Crewboats, Inc., in which he asserted claims for negligence under the Jones Act, as well as unseaworthiness of the vessel he piloted. We affirm.
In April 1994, Nelton, a six-year employee of Crewboats, was working on a three-week “hitch” as a ship’s captain. At that time, he was master of a Crewboats oilfield service vessel, the MTV SWIFT RUNNER, in the Ship Shoal area of the Gulf of Mexico. The vessel, a 47-foot long crewboat, was manned by a captain and a deckhand.
On the morning of April 4, while returning to a platform after making a fifteen minute run to another platform to pick up an item, Nelton claims to have encountered a four-foot wave which caused the vessel to “bottom out.” When this happened, Nelton alleges, he felt a “popping” sensation in his back. Nelton claims to have experienced pain after this incident, but he continued with his normal duties until April 15, 1994, at which time he reported a back injury to his employer. Nelton remained at work on the vessel, taking non-prescription pain medication and cold medication to sleep more easily. He experienced another ^incident on April 18, 1994, when he awoke for a fire drill and felt a numbness in his legs. He was relieved of duty on April 18, transported back to shore, and picked up by his wife.
*185 Nelton went to the emergency room on April 18. He was referred to Dr. Chris Cenec, who, later that week, found that Nel-ton had a mechanical disfunction in his mid-back and muscle spasms in the mid and lower lumbar segment. Dr. Cenec recommended physical therapy. Nelton soon discontinued physical therapy because he felt it was not working. In May 1994, Nelton was examined in the office of Dr. Stuart Phillips. After performing tests, Dr. Phillips believed that Nelton suffered from herniated disks, and on August 15, 1995, he performed an anterior lumbar fusion on Nelton.
Crewboats paid maintenance and cure to Nelton, a Jones Act seaman. Nelton filed this suit, claiming that Crewboats was negligent by forcing him to work in a vessel which was not large enough to withstand the rough waters which he encountered. Further, Nel-ton claimed that the vessel was unseaworthy because of the existence of a footrest attached to the captain’s seat which prevented the captain from being able to stand directly in front of the wheel to pilot the vessel instead of sitting in the captain’s chair.
At trial, Nelton’s only expert witness was Captain “Red” Key, accepted by the court as an expert in the field of seamanship and vessel operation. The trial judge held the record open to review future depositions of Nelton’s other expert, John Deck, as well as Crewboats’s experts, David Cole and Nash Roberts III. On May 6, 1996, the trial judge rendered a judgment which dismissed Nel-ton’s claims against Crewboats, finding no negligence on the part of Crewboats and no unseaworthiness of the vessel. Included in his Reasons for Judgment, the trial judge noted:
|3The plaintiff drove this same vessel for over three months prior to this accident without complaint, in seas equally as rough as those alleged. The plaintiff could stand to one side of the console and easily operate the vessel, or use the seatbelt provided in the ease of rough seas.
In his testimony about the incident which Nelton claims caused his injury, Nelton said that on his way to pick up the requested item, nothing prevented him from operating the vessel at full speed. Returning, Nelton said he was able to operate the vessel at full speed for five to six minutes, and then he slowed down for about a minute and a half because of increasing seas. Nelton said that the seas were two to three feet with an occasional four foot wave. After crossing the wave which he claims caused his back injury, he continued on for eight to ten minutes at the same speed until he reached the platform. He was not using the seatbelt attached to the captain’s chair, and he claims not to have come out of the seat at all during the incident.
An employer’s potential liability in a negligence action brought by an employee extends to all personal injuries arising during the course of the seaman’s employment, but proof of negligence is essential to recovery. Foster v. Destin Trading Corporation, 96-0808 (La. 5/30/97), 700 So.2d 199, 208 (on rehearing 10/21/97). Such negligence may arise in many ways, including the failure to use reasonable care to provide a seaman with a safe place to work, the existence of a dangerous condition on or about the vessel, or any other breach of the duty of care. Id. The duty of care owed by an employer under the Jones Act is that of ordinary prudence— the duty to take reasonable care under the circumstances. Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, 335-36 (5th Cir. 1997). The seaman bears the evidentiary burden of proving that a breach of the duty owed by the employer was a cause of his injuries. Id: The finding of Jones Act negligence is a factual question which is reviewed under the manifest error standard. Johnson v. Offshore Exp., Inc., 845 F.2d 1347, 1352 (5th Cir.), cert. denied, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 533 (1988).
The record does not substantiate Nel-ton’s claim of negligence against his employer. The testimony in the record not only makes it clear that Nelton was a very experienced seaman, but it also establishes that he had final authority over whether to use the vessel at any given time. Admitted into evidence was a safety agreement signed by Nelton in which he accepted the responsibility of operating Crewboats’s vessels in a safe manner so as to minimize the risk of injury *186 to those aboard the vessel. He also signed a document acknowledging sole responsibility for the operation of any vessel he piloted, and allowing him to decline service for clients depending on equipment, weather or sea conditions.
There was no evidence that the vessel was not designed or equipped to confront the conditions in the area where Nelton was at the time of this incident. Nelton’s testimony concerning a prior complaint made about the size of the vessel was non-specific and uncorroborated. Neither of Nelton’s experts gave convincing testimony on the existence of “rough seas.” On the other hand, Crew-boats’s experts, meteorologist Nash Roberts III and David Cole,[1] clearly explained that, according to all available data, the seas were calm at the time and place that Nelton claims to have encountered rough seas.
Adding to our skepticism about the existence of rough seas is Nelton’s own statement that his body never came off of the seat during the incident and that he chose not to use an available seatbelt. This is not to say that we find that Nelton did not encounter at least one four-foot wave; rather, we find that the trial court, keeping in mind that “rough seas” is not easily definable, had the responsibility |5of sifting through the contradictory evidence on the existence of rough seas to assess witness credibility and/or expertise in making its findings of fact.
Overall, the evidence presented failed to establish any negligence by Crewboats. Nek ton did not prove that Crewboats breached its duty to him to take reasonable care under the circumstances in providing him with this vessel in these waters. We find no manifest error in the trial judge’s finding on Crew-boats’s alleged negligence.
Independent of the duty under the Jones Act to exercise reasonable care, the owner of a vessel has an absolute and nondel-egable duty to furnish a seaworthy vessel. Foster, 700 So.2d at 209; Florida Fuels, Inc. v. Citgo Petroleum Corp., 6 F.3d 330, 332 (5th Cir.1993), cert. denied, 511 U.S. 1019, 114 S.Ct. 1400, 128 L.Ed.2d 73 (1994). This duty extends to a defective condition of the vessel, its equipment, or appurtenances. Phillips v. Western Co. of North America, 953 F.2d 923, 928 (5th Cir.1992). An unsafe method of work may also render a vessel unseaworthy. Id.
A breach of the duty of seaworthiness gives rise to a claim for general damages. Foster, 700 So.2d at 209. The plaintiff bears the burden of proving that “the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness.” Johnson, 845 F.2d at 1354.
The test for determining unseaworthiness is one of reasonable fitness; the vessel, its equipment, and appurtenances need not be perfect, but all must be reasonably fit for their intended use. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941 (1960).
Nowhere is the evidence more lacking in this case than on the existence of an unsea-worthy condition. Nelton’s expert, Red Key, testified that he believed |6that the vessel was seaworthy. In .his opinion, however, the captain’s seat did not have proper shock-absorbing ability for rough seas, and the seat’s proximity to the console prevented the captain from standing to pilot the vessel and absorbing the shock with his legs.
John Deck, Nelton’s other expert, believed that- the vessel was unseaworthy, but he knew of no regulation or standard of which this seat Configuration was in violation, and indeed, did not know how the seat was padded.
Furthermore, the record establishes the existence of a “toggle” switch on the console which would enable the captain to stand to one side of the chair and control both the port and starboard engines front one side. Nelton did not sufficiently explain why, at the time in question, he could not or did not use the switch and have stood up instead of remaining in his seat without the seatbelt. Indeed, Nelton admitted that nothing pre *187 vented him from standing and driving the vessel.
Failing to prove that the vessel or its seat was not reasonably fit for its intended use, Nelton was unable to prove an unsea-worthy condition which played a substantial part in bringing about or actually causing his injury. There is no manifest error in the trial judge’s conclusion on unseaworthiness.
Because we find no merit in Nelton’s claims of negligence against his employer or unseaworthiness of the vessel, we need not discuss whether Nelton sufficiently proved his injury. Notwithstanding, we note that while, in Dr. Phillips’s opinion, there was a reasonable medical probability that the incident on the vessel caused Nelton’s injury, Dr. Phillips had no record of the second incident to which Nelton testified — when he arose from his bunk for a fire drill. Had he been apprised of this incident, Dr. Phillips said, his opinion on causation may well have changed.
^Accordingly, having found no clear error in the trial court’s judgment which dismissed Nelton’s suit against his employer, we affirm the judgment.

AFFIRMED.

. Cole was accepted by the trial court as an expert in seamanship and maritime accidents.