# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 9, 2010

No. 10-30236

Lyle W. Cayce
Clerk

STEVE D. LANDERS,

Plaintiff-Appellant

v.

BOLLINGER AMELIA REPAIR, LIMITED LIABILITY CORPORATION,

Defendant-Appellee

Appeal from the United States United States District Court
for the Eastern District of Louisiana
USDC No. 2:08-CV-1293-MVL-SS

Before REAVLEY, BENAVIDES, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

This admiralty case requires us to determine whether a maritime status arose between Defendant-Appellee dock owner, Bollinger Amelia Repair, L.L.C. ("BAR"), and Plaintiff-Appellant, Steve D. Landers, when Landers used BAR's gangway. As no relevant facts or law support a finding that a maritime relationship existed between this dock owner and the docked vessel's crew member, we find no admiralty status and affirm the judgment of the district court.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-30236

The M/V ROSEANNA, an offshore supply boat owned and operated by Kevin Gros Offshore, L.L.C. ("Kevin Gros"), arrived at a BAR dock on June 12, 2006, after its starboard stern hull next to its water tank was punctured by an offshore platform.[1]  The gangway aboard the M/V ROSEANNA was unusable because it was defective and blocked by cargo.  In any case, BAR requires that vessels tied to its dock use a BAR gangway.  Landers, an unlicensed engineer assigned to the M/V ROSEANNA, and Leonard Horne, another crew member, then obtained a thirteen-foot aluminum gangway from the BAR dock and placed it between the dock and the vessel.[2]  An employee of Kevin Gros inspected the gangway before the crew used it and found it to be free of defects.  Landers used the gangway several times without a problem.  Thereafter, the Kevin Gros port captain determined that the M/V ROSEANNA crew could repair the damage around the water tank without BAR's assistance.  Thus Kevin Gros never contracted with BAR for repair work.  Later that day while Landers and Horne were in the process of removing the gangway–Landers pushed the gangway away from the vessel, and Horne pulled it onto the dock–the gangway stopped and sprung back, injuring Landers' back.  Afterwards, Landers observed a broken metal cross bar on the underside of the gangway.

Landers then filed suit against Kevin Gros, and later added BAR as a defendant claiming BAR was negligent under maritime law for failing to provide a safe gangway.  Landers settled his claims against Kevin Gros.  The district

---

[1] We will assume that BAR did own this dock, viewing the facts in the light most favorable to the non-moving party. *See* R. at 134-35.

[2] Landers asserts that a BAR employee may have placed the gangway between the dock and vessel, but this representation is contrary to the sworn testimony of Horne. R. at 863-64 ("[Landers and I] put it–if I remember right . . . I don't remember nobody else helping us do that").  The testimony of BAR's 30(b)(6) representative, which Landers cites as evidence that a BAR employee may have placed the gangway, in fact indicates that a BAR employee did not personally place the gangway since "[a]s a rule [BAR] use[s] extended-boom forklifts and cranes to move and set [its] gangways in place."  R. at 2647.

court granted BAR's motion for summary judgment, holding that BAR did not have a maritime relationship with Landers, and that any claim under Louisiana law had expired under the one-year statute of limitations for tort claims. The district court denied Plaintiff's Motion to Re-Open Case and Motion for New Trial. Landers timely filed a Notice of Appeal of the district court's order denying his motion to re-open the case.

Though Landers specifically appealed only the district court's judgment denying his motion to re-open the case in his Notice of Appeal, a denial which we would review for abuse of discretion, Landers argues that he intended to appeal the district court's grant of BAR's motion for summary judgment and consequent dismissal of his complaint. A party must designate each judgment he appeals, Fed. R. App. P. 3(c)(1)(B), but "[w]e will liberally construe such notices where the intent to appeal an unmentioned or mislabeled ruling is apparent and there is no prejudice to the adverse party." *Choate v. Potter*, 349 F. App'x 927, 929 (5th Cir. 2009) (citing *C. A. May Marine Supply Co. v. Brunswick Corp.*, 649 F.2d 1049, 1056 (5th Cir. July 1981)). "When the appellant clearly intends to appeal from the underlying judgment and the appellee will not be prejudiced, we treat an appeal from an order denying a motion for new trial as an appeal from the adverse judgment itself." *United States v. Lopez-Escobar*, 920 F.2d 1241, 1244 (5th Cir. 1991) (citations omitted). While Landers noticed only his appeal of the district court's denial of his motion for reconsideration, that judgment was intertwined with the judgment granting BAR's motion for summary judgment, and the latter appeared in the title of his motion challenging the district court's refusal to reopen the case, which he included in the Notice of Appeal. Moreover, both parties briefed the issues related to the judgment dismissing the complaint, and BAR will not be prejudiced by our consideration of it. Accordingly, we will consider the district court's grant of BAR's motion for summary judgment and the issues involved therein.

No. 10-30236

"We review a grant of summary judgment *de novo*, applying the same legal standard as the district court." *Croft v. Governor of Tex.*, 562 F.3d 735, 742 (5th Cir. 2009) (internal quotations omitted). Summary judgment should be rendered if the record demonstrates that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "An issue is material if its resolution could affect the outcome of the action." *Daniels v. City of Arlington,* 246 F.3d 500, 502 (5th Cir. 2001). "In deciding whether a fact issue has been created, the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id.*

Landers argues that by requiring docked ships to use BAR's gangways, BAR "stepped into the vessel owner's shoes and, as a result, [] assumed a maritime duty to provide a gangway free from hidden defects," under "general maritime negligence law." Appellant's Br. at 20, 22.[3] Landers acknowledges that "BAR, as a dock owner, had no duty to furnish plaintiff's vessel with a gangway," *id.* at 22, and also concedes that BAR "did not owe the plaintiff a duty of seaworthiness because [BAR] was not the vessel owner." *Id.* at 25. Rather, Landers asks the court to "establish a new legal precedent . . . [that] [w]hen a ship repairer/dockowner assumes the vessel owner's duty to provide equipment to a vessel . . . then the ship repairer/dockowner should be [potentially] liable under the general maritime law of negligence." *Id.* at 26. As Landers has failed to present any cogent basis for us to expand maritime jurisdiction in this way, we decline to do so, and find that the district court properly refused to apply maritime law to the facts of this case.

---

[3] We reject BAR's contention that Landers waived the argument that BAR acquired a maritime status with Landers because he failed to present it to the district court. Rather, we believe that Landers did make this argument before the district court as this argument was one of the primary arguments that the district court addressed. *See* R. at 3038-40.

No. 10-30236

"It is well-established that maritime law encompasses the gangway. It is also well-established that a vessel owner has a 'fundamental duty' to provide its crew members with a reasonably safe means of boarding and departing from the vessel." *Florida Fuels v. Citgo Petroleum Corp.*, 6 F.3d 330, 332 (5th Cir. 1993) (internal citations omitted). "Under general maritime law, a vessel owner has 'an absolute nondelegable duty to provide a seaworthy vessel' to crew members." *Id.* (quoting *Brister v. A.W.I. Inc.*, 946 F.2d 350, 355 (5th Cir. 1991)). This duty is irrespective of "'fault or the use of due care.'" *Id.* (quoting *Brister*, 946 F.2d at 355). "The idea of seaworthiness and the doctrine of implied warranty of seaworthiness arises out of the vessel, and the critical consideration in applying the doctrine is that the person sought to be held legally liable must be in the relationship of an owner or operator of a vessel. The usual relationship for recovery has been referred to as three-cornered: master, i.e., owner or operator, vessel and shipworker." *Daniels v. Florida Power & Light Co.*, 317 F.2d 41, 43 (5th Cir. 1963). For these reasons, "[i]t is well-settled [] that the doctrine of 'seaworthiness' is not applicable to a dock owner who does not occupy the position of owner or operator of the vessel." *Florida Fuels*, 6 F.3d at 332. Moreover, "[a]bsent a maritime status between the parties, a dock owner's duty to crew members of a vessel using the dock is defined by the application of state law, not maritime law." *Id.*

We are unconvinced by Landers' argument that BAR's gangway policy gives it a maritime relationship with Landers. As a preliminary matter, we note that in this case there is no summary judgment evidence that BAR played a role in the M/V ROSEANNA's crew members' use of BAR's gangway. In fact, it is undisputed that there was no useable and accessible gangway aboard the M/V ROSEANNA, and thus Kevin Gros's employees could not possibly have used their own gangway. There is no evidence that anyone other than Landers and Horne, both Kevin Gros employees, set up or removed the BAR gangway.

5

Additionally, a Kevin Gros employee inspected the gangway before its use.

Next, Landers does not cite any cases that stand for his proposition that a dock owner may step into the role of the shipowner and trigger maritime tort liability by requiring use of one of its gangways. Instead, Landers asks us to apply the "'Good Samaritan' rule," Appellant's Br. at 22, that "[o]ne who undertakes . . . to render services to another . . . is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking," if certain conditions are met. Restatement (Second) of Torts § 323. Landers fails to explain how this principle triggers maritime liability rather than negligence liability under state law, however. This principle provides no basis to apply maritime law in this case.

In any case, because a shipowner's duty to provide a gangway to his crew members falls under his absolute duty to provide a seaworthy vessel to them, the logical conclusion of Landers' argument that by requiring use of its gangway BAR has stepped into the role of shipowner, is that BAR has acquired the absolute duty of providing a seaworthy gangway to Landers. But, the law is clear that the seaworthiness doctrine is limited to vessel owners or operators, and thus would not apply in this case. *See Daniels*, 317 F.2d at 43 ("The refusal of the District Court to apply the doctrine to hold a husbanding agent, not the employer of the seaman and who did not operate and control the vessel at the time of the injury was affirmed in *Romero v. International Terminal Operating Company*, 1959, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368."). Landers' attempt to avoid this result by concluding that by having a policy requiring use of a BAR gangway, BAR acquired the duty of providing a safe gangway under general maritime negligence law, is not based in law or logic, and thus we reject it.

Additionally, Landers' argument would require us to ignore our established precedent that a dock owner does not have a general maritime duty to provide a crew member with a means of boarding and departing from the ship;

No. 10-30236

such a duty does not exist between a "dock owner toward a vessel crew member aboard the vessel." *Florida Fuels*, 6 F.3d at 333 (finding dock owner had no maritime duty to a crew member of a docked vessel who fell off of a ladder that he used when the dock owner failed to provide access to its dock). We also accept BAR's argument that in this case, where BAR employees played no role in the placement or removal of the BAR gangway, BAR's policy that docked ships must use a BAR gangway is similar to the sort of custom that we have found insufficient to create a duty. *See id.* at 334 ("Although custom may be considered as evidence bearing on the question of negligence once a duty is found to exist, custom itself does not create the duty . . . the fact that [the dock owner] furnished means of access to vessels at some of its docks does not create a legal duty on the part of [the dock owner] to provide a means of access for the [ship's] crew members.")

As we find that the district court properly granted summary judgment to BAR, we also find that the district court properly denied Landers relief under Federal Rule of Civil Procedure 59(e), as Landers did not present any newly discovered evidence or demonstrate a manifest error of fact or law in his motion to re-open the case.

For the foregoing reasons, the opinion of the district court is AFFIRMED.