**In the Matter of CROUNSE CORPORATION, As Owner of Barge C512.**

**TENNESSEE VALLEY AUTHORITY, Plaintiff,**

v.

**VULCAN MATERIALS COMPANY, et al., Defendant.**

**No. 94–3066–D/A.**

United States District Court, W.D. Tennessee, Western Division.

Nov. 19, 1996.

---

**1394**

## ORDER ON THIRD–PARTY DEFENDANT CROUNSE CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT

DONALD, District Judge.

This matter is before the Court, sitting in admiralty pursuant to 28 U.S.C. § 1333, upon the motion of third-party defendant Crounse Corporation ("Crounse") for partial summary judgment dismissing all liability claims against it. Plaintiff Tennessee Valley Authority ("TVA") and defendants/third-party plaintiffs Vulcan Materials Company, Central States Materials, Inc., and Reed Crushed Stone Company, Inc. (collectively, "Vulcan"), oppose the Crounse motion in separate memoranda. The case fits within the provisions of FED.R.CIV.P. 9(h), describing admiralty and maritime claims.

For the limited purpose of this summary determination, the Court considers the following facts. On the morning of December 24, 1992, the Crounse tug M/V HAZEL delivered nine Crounse barges loaded with crushed rock to the Vulcan fleeting facility, immediately upriver of the Vulcan material yard, between mile points 733 and 734 on the Mississippi River, where Vulcan maintained wire cables and soft line for use in tying off barges. The crew of the M/V Hazel negligently[1] moored the tow to the left descending bank. On December 25, 1992, at approximately 4:00 a.m., the Vulcan towboat M/V VALERIE J, visited the moored Crounse nine-barge tow. As the VALERIE's crew inspected the Crounse barges, they concluded that the tow was improperly moored. The VALERIE's crew spent approximately twenty to thirty minutes at the Crounse tow, testing the lines and tying off loose ends but leaving the moorings substantially unaltered.

Shortly after midnight on December 26, 1992, several Crounse barges from were sighted drifting downriver of the Vulcan fleeting facility. A rescue operation resulted in the recovery of eight of the nine Crounse barges. The ninth Crounse barge (the C512) was not recovered. Soon after the breaka-

way, the Coast Guard discovered a sunken barge below the northwest caisson of TVA Tower No. 174. For the purposes of this motion, the Court and the parties will assume that the barge beneath TVA Tower No. 174 is the missing C512. Also for purposes of this summary determination, the C512 is presumed to have collided with and caused damage to TVA Tower No. 174.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir.1986). The burden on the party moving for summary judgment may be discharged by "pointing out that there is an absence of evidence to support the nonmoving party's case." *Kauffman v. Allied Signal, Inc., Autolite Div.*, 970 F.2d 178, 182 (6th Cir.), *cert. denied*, 506 U.S. 1041, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992) (the moving party need not support its motion with affidavits or other similar materials "negating" the opponent's claim) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists if the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party. *Id.* The party opposing the motion must "do more than simply show that there is some meta-physical doubt as to the material facts." *Matsushita Elec-*

---

**1.** Crounse Memorandum in Support of Motion for Summary Judgment, p. 3, n. 4, p. 13; TVA Memorandum in Opposition to Motion for Sum- mary Judgment, p. 2; Vulcan Memorandum in Opposition to Motion for Summary Judgment, p. 5.

*trical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). In short, the nonmoving party may not oppose a properly supported motion for summary judgment by mere reliance on the pleadings. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2554. "[I]n the 'new era' of summary judgments that has evolved from the teachings of the Supreme Court in *Anderson, Celotex* and *Matsushita,* trial courts have been afforded considerably more discretion in evaluating the weight of the nonmoving party's evidence." *Cox v. Kentucky Dep't of Transp.,* 53 F.3d 146, 150 (6th Cir.1995). "If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the nonmoving party, the motion must be granted." *Id.*

Viewed in the light most favorable to the nonmoving parties, *Kochins,* 799 F.2d at 1133, the facts and inferences show that Crounse was negligent in the initial mooring of the tow, and that Vulcan did not exert any later, harmful influence upon the Crounse tow during the VALERIE's December 25 inspection. However, Crounse asserts that either (1) Vulcan is negligent, as fleeter, in its failure to secure the Crounse tow or (2) a presumption of Vulcan's negligence arises because Vulcan employees were the last to touch the barges and their riggings, and, consequently, that Vulcan's negligence supersedes the initial negligence of Crounse in failing properly to secure the tow upon delivery on December 24. In effect, Crounse claims that there was a shift of responsibility when it moored the barges at the Vulcan fleeting facility, or at the latest, when the VALERIE inspected the barges on the morning of December 25. Vulcan's alleged negligence in failing properly to inspect the moored barges and to secure the improper moorings is disputed by Vulcan and accepted by TVA. Neither the Court nor the parties have found a controlling case in the Sixth Circuit.

From 1855 to 1975, property damages in admiralty cases were divided equally among liable parties, regardless of their relative degrees of fault. *United States v. Reliable Transfer Co., Inc.,* 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975); *see also The* *Schooner Catharine v. Dickinson,* 58 U.S. (17 How.) 170, 15 L.Ed. 233 (1854) (Supreme Court adopts divided damages rule, which is then the prevailing rule in England). Prior to *The Schooner Catharine,* the doctrine of divided damages or its equivalent had been known to maritime nations, according to most commentators, since the Laws of Oleron (c. 1150 A.D.). *Reliable Transfer,* 421 U.S. at 402, n. 3, 95 S.Ct. at 1711, n. 3.

During its prevalence, the divided damages rule suffered the application of several ameliorative exceptions, including but not limited to: the major-minor fault rule, the active-passive fault rule, the doctrine of superseding cause, the doctrine of intervening negligence, and the last clear chance rule. *See* Etta M. Davidson, LAST CLEAR CHANCE IN ADMIRALTY: A DIVIDED DOCTRINE, 66 Tex. L.Rev. 133 (1987); *see also* William Jones Miller, SUPERSEDING CAUSE: STILL A VIABLE DEFENSE IN ADMIRALTY, 18 Tul.Mar.L.J. 211 (1994). In 1975, the Supreme Court discarded the longstanding divided damages rule and instituted a comparative negligence standard in admiralty cases. *Reliable Transfer,* 421 U.S. 397, 411, 95 S.Ct. 1708, 1715–16, 44 L.Ed.2d 251 ("We hold that when two or more parties have contributed by their fault to cause property damage in a maritime collision or stranding, liability for such damage is to be allocated among the parties proportionately to the comparative degrees of their fault.").

In a recent opinion, a unanimous Supreme Court suggested that the doctrine of proximate causation was never before the Court in *Reliable Transfer. Exxon Co. v. Sofec, Inc.,* —— U.S. ——, ——, 116 S.Ct. 1813, 1818, 135 L.Ed.2d 113 (1996). The *Sofec* Court differentiated between the discretionary application of an ameliorative exception and the necessary application of a proximate causality analysis integral to American tort law, incorporating 1 T. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 5–3, pp. 165–66 (2d ed. 1994), into its decision:

> The doctrine of superseding cause is ... applied where the defendant's negligence in fact substantially contributed to the plaintiff's injury, but the injury was actually brought about by a later cause of inde-

pendent origin that was not foreseeable. It is properly applied in admiralty cases. [T]he superseding cause doctrine can be reconciled with comparative negligence. Superseding cause operates to cut off the liability of an admittedly negligent defendant, and there is properly no apportionment of comparative fault where there is an absence of proximate causation.

*Sofec,* —— U.S. at ——, 116 S.Ct. at 1818.

In *Sofec,* a storm caused the Exxon tanker HOUSTON to brake away from a Single Point Mooring System (SPM) manufactured by respondent Sofec. *Id.* at —— – ——, 116 S.Ct. at 1815–16. Another cause of the breakout was the negligence of Sofec in its manufacture of the SPM. *Id.*

With an oil hose trailing and threatening to foul its propeller, the HOUSTON ran to deep water. *Id.* at ——, 116 S.Ct. at 1816. Within approximately one hour of the breakout, the Houston had reached a safe position, and an assist vessel had control of the end of the attached hose. *Id.* For the next 1½ hours, the crews of the HOUSTON and the assist vessel worked to disconnect the hose from the HOUSTON. *Id.* Without plotting the HOUSTON's position, the captain then turned her shoreward and stranded her on a known reef. *Id.*

The district court found the failure of HOUSTON's captain to plot fixes to be grossly and extraordinarily negligent. *Id.* Furthermore, the district court held that prior to the captain's negligent maneuver, the HOUSTON had successfully "reached a safe position" and "avoided the peril resulting from the breakout." *Id.* Both findings were upheld upon review.

*Sofec* turned on a causality analysis. *Id.* at —— – ——, 116 S.Ct. at 1817–18. The Supreme Court determined that the harm which befell the HOUSTON when she was negligently steered into the reef was not reasonably foreseeable by Sofec in its negligent manufacture of the SPM. *Id.* at ——, 116 S.Ct. at 1817. Although Sofec's negli-

gence was a cause in fact of the HOUSTON's breakout and subsequent positioning prior to the captain's turn into the reef, it was the captain's gross and extraordinary negligence in failing to plot fixes prior to giving the order to turn shoreward that was the proximate cause of the HOUSTON's stranding. *Id.* In other words, a terminus [2] was reached—when the ship was safe from the peril reasonably foreseeable by Sofec as a logical continuation of its negligence and a subsequent act or omission of extraordinary negligence on the part of Exxon occurred—at which point Sofec was relieved of liability. *Id.*

*Sofec* clears whatever uncertainty there was about causality in maritime tort law after *Reliable Transfer.* Although the demise of the divided damages rule in maritime tort law also spelled the demise of the major-minor fault and active-passive negligence "escape valves", the proximate causation requirement was left undisturbed. *See Sofec,* —— U.S. at ——, 116 S.Ct. 1813. *Sofec* states that the proximate causation requirement was never before the Supreme Court in *Reliable Transfer. Sofec,* —— U.S. at ——, 116 S.Ct. at 1818. Iterating that "there is properly no apportionment of comparative fault where there is an absence of proximate causation," [3] *Sofec* differentiates between the proximate causality elements of supervening cause or last clear chance, and the discarded remains of supervening cause or last clear chance in their ameliorative utilities, essentially as employed as agents of the active-passive or major-minor rules to escape the harsh effects of divided damages. *See* Last Clear Chance in Admiralty, *supra,* at 156 (where last clear chance is representative of the major-minor fault rule, *Reliable Transfer* renders it obsolete; where last clear chance embodies a rule of legal causation, it is unaffected by *Reliable Transfer*).

Crounse relies heavily on *Sofec*'s reaffirmation of the role of superseding cause exculpation in maritime tort law. Crounse also re-

---

**2.** *See Sinram v. Pennsylvania R.R.,* 61 F.2d 767 (2d Cir.1932) (illustration by Judge Learned Hand of the terminus of a prior act of negligence supervened in time by a subsequent, independent act of negligence).

**3.** —— U.S. at ——, 116 S.Ct. at 1818, quoting Schoenbaum, *supra* page 5, at 166.

lies on a prior case from the Eighth Circuit which held that the doctrine of superseding negligence had survived the Supreme Court's decision in *Reliable Transfer. See Lone Star Ind., Inc. v. Mays Towing Co., Inc.*, 927 F.2d 1453 (8th Cir.1991). In *Lone Star*, the plaintiff (Lone Star) contracted in December of 1983 with the defendant (Mays) to transport three Lone Star barges loaded with concrete from Cape Girardeau, Missouri to Memphis, Tennessee. During transit on an icy Mississippi River, and unknown to anyone, one of the barges—the LS 1501—received a crack to its stern above the waterline. Applying the doctrine of *res ipsa loquitur*, the district court held Mays' inferentially negligent, and thus liable for the ruptured hull. *Id.* at 1456. Evidence at trial established that the LS 1501 probably did not take on water en route to Memphis. *Id.* at 1459.

When the barges arrived in Memphis on December 25, they were covered with ice and snow but in otherwise normal trim. While attempting to conduct a standard pre-unloading inspection of the LS 1501 on December 26, Lone Star employees were unable to open the stern hatches. Two days later, still unable to conduct a proper inspection of the stern compartments, Lone Star decided to go ahead with the unloading. Because the barges are unloaded bow to stern, part of the stern necessarily submerges during the process. When the stern of the LS 1501 submerged, it took on water through the crack and subsequently sank. The district court found that the LS 1501 sank because it had a cracked hull which became submerged during the unloading process. *Id.* at 1455. Furthermore, the district court found Lone Star negligent in failing to inspect the LS 1501's stern hull prior to unloading. *Id.* at 1458. All factual findings were upheld on appeal. *Id.*

The district court apportioned comparative liability between Lone Star and Mays, forty percent (40%) and sixty percent (60%), respectively. *Id.* On appeal, the Eighth Circuit Court of Appeals reversed the judgment and remanded the case to the district court with instructions that Lone Star's negligence superseded the negligence of Mays, thereby relieving Mays from liability for the loss of the barge and the cargo. *Id.* at 1461. The court of appeals instructed the district court that Mays' only liability was for the damage to the hull of the LS 1501. *Id.*

In *Lone Star* there were two negligent actors. First was Mays, which, by the application of *res ipsa loquitur*, negligently caused the fracture to the stern of the LS 1501. *Id.* Second was Lone Star, which negligently caused the LS 1501 to be unloaded without a proper inspection of the stern hull. *Id.* On appeal, the case turned upon whether the type of harm resultant from the negligence of the actor exerting the intervening force is different in kind from the type which would have occurred as a result of the initial negligence and in the absence of the intervening force. *Id.* at 1459. The type of harm that occurred—i.e., the barge's sinking due to a fracture in its stern hull above the waterline—would not have occurred without the superseding negligence accompanying the barge's unloading. *Id.* at 1459–60. The court decided that the proximate cause of the sinking of the barge was the negligent act of unloading the barge without inspecting its hull. *Id.* at 1461. Relieving Mays from proportional liability, the court found that the possibility that Lone Star might unload the barge without inspection was not within the scope of the risks attributable to Mays under the circumstances. *Id.* at 1460.

Respondents, through their several memoranda, primarily rely on an Eleventh Circuit case from 1985, *Hercules, Inc. v. Stevens Shipping Co.*, 765 F.2d 1069 (11th Cir.1985), wherein the court suggested that Reliable Transfer's rejection of the divided damages rule removed any justification for applying the doctrines of intervening negligence and last clear chance. *Id.*

In that case, Escambia employed the Hercules barge HERWOOD and the Detco tug TRACY D to deliver no more than 2,000 short tons of telephone poles from Georgia to Puerto Rico. *Id.* at 1070. Escambia hired Stevens, a stevedoring firm, to load the poles onto the barge. In the subsequent enterprise each party made serious mistakes. Escambia knowingly delivered more than 2,000 short tons to the HERWOOD, and Stevens loaded the cargo negligently. *Id.* at 1071.

The TRACY D's captain opined that a two- to three-inch port list of the HERWOOD at the beginning of the voyage would present no problem. *Id.*

When the HERWOOD arrived at the Dominican Republic, however, the port list had become severe. *Id.* The district court found that shifting of the cargo caused the list. *Id.* When the tug captain notified the tug and barge owners of the problem, he was instructed to balance the tug by filling one of her starboard compartments with water, instead of restowing the cargo. *Id.* The captain negligently filled the wrong compartment. *Id.* However, the barge righted itself. *Id.* Over the captain's protestations, Detco and Hercules ordered the HERWOOD to proceed to Puerto Rico. *Id.* at 1072. The tow encountered a storm, and the barge began to list starboard, finally capsizing and losing the cargo. *Id.*

The district court found that the loss of the HERWOOD's cargo was the proximate result of the joint and concurrent negligence of Stevens, Hercules, Detco and Escambia, and apportioned liability as follows:

| | |
|---|---|
| Stevens: | 35% |
| Hercules: | 35% |
| Detco: | 20% |
| Escambia: | 10% |

*Id.* at 1072. Because there were various barriers to recovery against Hercules, Detco, and Escambia, Escambia's subrogee held only a judgment against Stevens for 35% of the value of the lost cargo. *Id.* at 1072–73. Stevens appealed, claiming, *inter alia*, that its negligence was too remote to be proximate to the capsize, and that the negligence of Hercules and Detco acted as a superseding or intervening cause, thus exculpating Stevens from liability.

The Eleventh Circuit Court of Appeals left the district court's findings of fact undisturbed upon appeal. *Id.* at 1073. In rejecting Stevens' appeal and affirming the district court's apportionment of liability, the court of appeals held that Reliable Transfer had eliminated the utility of the doctrines of intervening negligence and last clear chance in admiralty, by the following route of logic:

> Under a "proportional fault" system, no justification exists for applying the doctrines of intervening negligence and last clear chance. Unless it truly can be said that one party's negligence did not in any way contribute to the loss, complete apportionment between the negligent parties, based on their respective degrees of fault, is the proper method for calculating and awarding damages in maritime cases. The doctrines of intervening negligence and last clear chance should not be used to circumvent this "proportional fault" concept.

*Id.* at 1075.

The conclusion of this Court is that the doctrines of superseding cause and last clear chance still exist in maritime tort law, within the requirement of proximate causation. *See Sofec,* —— U.S. at ——, 116 S.Ct. at 1818; *accord Nunley v. M/V Dauntless Colocotronis,* 727 F.2d 455, 463–64 (5th Cir.1984) (en banc). The court will not follow *Hercules.* Rather, it is before the Court to determine whether or not the facts in the instant matter support exoneration by superseding cause.

> A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about.

RESTATEMENT (SECOND) OF TORTS § 440 (1964).

■ For the purposes of this summary determination and in accordance with *Kochins,* 799 F.2d 1128, the court will accept that Crounse negligently moored the barges at the Vulcan fleeting facility, and that Vulcan's negligence, if any, occurred in its failure as fleeter and wharfinger to inspect and remedy the situation. In this framework, Crounse is the negligent actor and Vulcan the intervening force.[4]

RESTATEMENT (SECOND) OF TORTS § 441(1) (1964).

---

**4.** An intervening force is one which actively operates in producing harm to another after the actor's negligent act or omission has been committed.

If Vulcan's putative negligence operates as a superseding cause, then Crounse is relieved of liability, irrespective of whether Crounse's negligence was or was not a substantial factor in bringing about the collision between the C512 and Tower No. 174.[5] Section 442 of the RESTATEMENT (SECOND) OF TORTS lays out the factors for determining whether an intervening force is a superseding cause, as follows:

(a) the fact that its intervention brings about harm different in kind from that which otherwise have resulted from the actor's negligence;

(b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;

(c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is not a normal result of such a situation;

(d) the fact that the operation of the intervening force is due to a third person's act or his failure to act;

(e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

(f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

RESTATEMENT (SECOND) OF TORTS § 442 (1964). An intervening negligent act is not a superseding cause if:

(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.

RESTATEMENT (SECOND) OF TORTS § 447 (1964).

In the matter *sub judice*, the Court finds that it was foreseeable to a reasonable actor that a failure to properly moor the barges might result in their breakaway and that a drifting, unmanned barge might collide with something on the river. *See United States v. Paducah Towing Co., Inc.*, 692 F.2d 412, 422, note 18 (6th Cir.1982) (drifting vessel becomes menace to those about her); *Trade Banner Line, Inc. v. Caribbean S.S. Co., S.A.*, 521 F.2d 229, 230 (5th Cir.1975) ("[I]t is common knowledge that a ship severed from its berth, adrift and not under command, runs a substantial risk of grounding."). It was foreseeable to a reasonable actor that, if negligently moored, the barges might break away before a third party was in a position to correct the moorings. *See Pasco Mktg., Inc. v. Taylor Towing Serv., Inc.*, 554 F.2d 808, 811 (8th Cir.1977) (presumption of fault rests with mooring vessel). It was foreseeable to a reasonable actor that, even if a third party were in the position to remedy the actor's initial negligence, the third party might be unable to do so. *Di Rago v. American Export Lines, Inc.*, 636 F.2d 860, 866, note 9 (3rd Cir.1981).

A reasonable person would not think it highly extraordinary that Vulcan might be understaffed on the 24th and 25th of December, 1992, and that the skeleton crew of the VALERIE might be incapable of remedying the initial actor's negligence in mooring the tow. A reasonable person would not regard it highly extraordinary that the skeleton crew of the VALERIE might be negligent in failing to take any and all available measures on December 25, 1992, to prevent the harm caused by Crounse's initial negligence.

Under foregoing analysis, Vulcan's actions and failures to act do not operate as superseding cause to relieve Crounse of liabili-

---

**5.** A superseding cause relieves the actor from liability, irrespective of whether his antecedent negligence was or was not a substantial factor in bringing about the harm.

RESTATEMENT (SECOND) OF TORTS § 440, Comment b (1964).

ty. Crounse's next argument rests in the alleged shift of responsibility to Vulcan, either at the time of delivery of the barges or as a result of the lapse of time between the delivery of the barges and their breakaway. Section 452 of the RESTATEMENT (SECOND) OF TORTS (1965) is helpful in this analysis:

(1) Except as stated in Subsection (2), the failure of a third person to act to prevent harm to another threatened by the actor's negligent conduct is not a superseding cause of such harm.

(2) Where, because of a lapse of time or otherwise, the duty to prevent harm to another threatened by the actor's negligent conduct is found to have shifted from the actor to a third person, the failure of the third person to prevent such harm is a superseding cause.

*Id.*

▇▇▇ The Court's conclusion that Crounse should have foreseen the possibility that an improperly moored tow might not be corrected within the 36 hours between delivery and breakout negates reliance on a shift of duty due to the lapse of time under these facts. Section 452(2) of the RESTATEMENT (SECOND) OF TORTS, however, allows that duty may shift by means other than temporal (e.g., contractually or quasi-contractually, or by bailment or other operation of law). Neither party has produced a contract or terms of an agreement limiting or assigning liability under these circumstances. However, Crounse cites several cases to support the proposition that Vulcan's duty as a fleeter created a bailment, and that Crounse's negligence in mooring of the tow ended at the onset of the bailment. The Court finds this argument unpersuasive because the safe and proper delivery of the tow (by the putative bailor to the putative bailee) is essential to the creation of the bailment. *Pasco*, 554 F.2d at 810–11; *Trade Banner Line*, 521 F.2d at 230–31; *see also* G. Hamp Uzzelle, III, LIABILITY OF WHARFINGERS, FLEETERS, AND BAILEES, 70 Tul.L.Rev. 647 (1995); *cf. Rodi Yachts, Inc. v. National Marine, Inc.*, 984 F.2d 880, 883–84 (7th Cir.1993). Initially, Crounse had the duty to moor the barges

it delivered, and failure in that duty imposes liability on the party delivering a vessel to the fleeter. *Rodi Yachts*, 984 F.2d at 883–84; *Pasco*, 554 F.2d at 811–12; *Marine Welding Serv., Inc. v. B–R River Serv., Inc.*, 550 F.Supp. 425, 428 (S.D.Ohio 1982); *see generally Trade Banner Line*, 521 F.2d 229. The fleeter is not an absolute bailee. *Missouri Portland Cement Co. v. Walker Barge Fleeting Serv., Inc.*, 561 F.Supp. 12, 14 (W.D.Ky. 1982).

In sum, the cases on which Crounse relies in support of its position that it is absolved of liability by superseding cause differ factually from the case *sub judice*. *Lone Star* is not a breakaway case, but rather, a case wherein the extraordinary negligence of the barge owner in unloading prior to inspection superseded the inferred negligence of the tower. *See Lone Star*, 927 F.2d 1453. In *Lone Star* the harm (sinking) would not have occurred but for the negligent unloading of the barge. *Id.*

*Sofec* imposed the barrier of superseding cause because, after a terminus, the captain of the HOUSTON acted with extraordinary negligence in failing to ascertain the ship's position before turning her shoreward. The captain's acts and omissions eliminated whatever causality had existed on the part of Sofec, up to that point. *Sofec*, —— U.S. at —— – ——, 116 S.Ct. at 1817–18. Again, in *Sofec*, the actual harm (steering into a reef) was essentially different from the potential harm of stranding or collision adrift, which latter potential harm would more likely have been attributed in part to Sofec. *See id.*

▇▇ In the matter before the Court, Crounse set in motion the events which led to the collision between the C512 and Tower No. 174. No terminus intervened between Crounse's initial negligence in failing to adequately secure the tow and the resultant harm caused by the unmanned and adrift C512 when it hit Tower No. 174. Under summary judgment analysis pursuant to FED. R.CIV.P. 56, the only intervention occurring in this case was the inspection of the tow and the putative failure of Vulcan to remedy the existent negligence on the part of Crounse.[6]

**6.** Where the negligent conduct of the actor cre-  ates or increases the foreseeable risk of harm

Even if the court were to accept Crounse's invitation to impute negligence to Vulcan because the VALERIE was the last vessel to touch the tow and Vulcan's employees were the last to touch the moorings, the summary judgment standard still would militate against granting this motion, where Crounse's initial negligence is admitted. *Cf. Daughenbaugh v. Bethlehem Steel Corp., Great Lakes S.S. Div.,* 891 F.2d 1199, 1205 (6th Cir.1989) (issues of negligence are ordinarily not susceptible to summary adjudication). Anything less than extraordinary negligence on the part of Vulcan is insufficient to operate as a superseding cause. *Sofec,* —— U.S. ——, 116 S.Ct. 1813. Because Crounse set the delict in motion, Crounse remains a liable party in the absence of extraordinary negligence on the part of an intervening force. *Cf. Sofec,* —— U.S. ——, 116 S.Ct. 1813; *Di Rago,* 636 F.2d 860.

Section 443 of the RESTATEMENT (SECOND) OF TORTS (1964) states that "the intervention of a force which is a normal consequence of a situation created by the actor's negligent conduct is not a superseding cause of harm." *Id.* In the matter under determination, it was entirely foreseeable to Crounse that the reaction of the VALERIE's crew might be to leave the improperly moored tow well enough alone, for fear of causing a breakaway.

*Reliable Transfer* controls the determination of this case. Unless Crounse can demonstrate that on these facts it would be entitled to a verdict, *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510, then the Court must proceed under proportional fault. Given the application of *Reliable Transfer* as explained by *Sofec* and other pertinent cases, the Court finds that Crounse has not met its burden of showing the absence of genuine issues of material fact. While superseding cause may exist in an admiralty case, it does not exist in this case under a summary judgment determination. The movant is not entitled to judgment as a matter of law. There are genuine issues of material fact for the finder of fact to resolve. For the foregoing reasons and after a thorough review of the record

through the intervention of another force, and is a substantial factor in causing the harm, such intervention is not a superseding cause.

and analysis of applicable law, the Court hereby **DENIES** Crounse's motion for partial summary judgment.

**IT IS SO ORDERED.**

RESTATEMENT (SECOND) OF TORTS § 442A (1964).