IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-3924
_____

RANDY P. FORRESTER,

                                        Plaintiff-Appellee,
                                        Cross-Appellant,

versus

OCEAN MARINE INDEM. CO.,

                                        Defendant,

ARCO OIL & GAS CO.,

                                        Defendant-Appellant,
                                        Cross-Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
(CA 88 0777 E)
_____
(December 17, 1993)


BEFORE REYNALDO G. GARZA, KING AND DeMOSS, Circuit Judges.

PER CURIAM:[*]

     In this admiralty case, Defendant-Appellant Arco Oil & Gas
Company (Arco) appeals the district court's determination that
Arco was liable for the injuries sustained by Plaintiff-Appellee
Randy P. Forrester when he attempted to disembark from the M/V
SEA HERCULEAN (the crewboat).  Arco insists that it owed no duty

_____

     [*]Local Rule 47.5 provides:  "The publication of opinions
that have no precedential value and merely decide particular
cases on the basis of well-settled principles of law imposes
needless expense on the public and burdens on the legal
profession."  Pursuant to that Rule, the Court has determined
that this opinion should not be published.

of reasonable care to Forrester in any of its several statuses: time charterer, platform owner, dock owner. As we agree, we reverse the judgment of the district court and render judgment for Arco, dismissing Forrester's action with prejudice.

I

FACTS AND PROCEEDINGS

Immediately prior to the accident, Forrester, a helicopter mechanic employed by Pumpkin Air, Inc., was working aboard an offshore production platform owned by Arco. Arco hired Pumpkin Air to provide helicopter transportation between the platform and the shore. Because inclement weather prevented Forrester from leaving Arco's platform by helicopter, he was provided transportation on the crewboat. Owned and operated by Transocean Marine, the crewboat was time chartered by Arco. At the onshore dock facility, Arco's dispatcher directed the crewboat captain to dock at the east dock, which was owned and operated by Arco.

Once the crewboat arrived, an Arco employee on the boat, Joe Smith, gestured to the men to move to the back of the ship. Eager to leave the crew boat after a stormy trip of four to five hours, the passengers began to disembark without waiting for the gangplank. They did so by stepping down onto the top of an outboard tire bumper, then jumping down from there to the dock several feet below. Although there is some confusion as to exactly when Forrester disembarked, he clearly was one of the first passengers off the boat. He testified that the passengers behind him were yelling at him to jump as he passed his luggage

2

off to helicopter pilot George Schaeffer, and, as he attempted to disembark, he fell to the dock and was injured.

The district court held that a time charterer, such as Arco, owes a high degree of care to passengers, including a reasonably safe means of boarding and leaving the vessel.  Moreover, the court found that Smith was in charge of (1) instructing passengers as to Arco's safety rules, and (2) disembarkation.  Smith was negligent in the performance of these duties, according to the court, as he was the first to leave the vessel and was already in the dispatcher's office when the accident occurred.

## II

### BACKGROUND

In determining the liability of a charterer to a third party, we must first ascertain the nature of the charter relationship.  There are three general categories of charters: the bareboat charter, the time charter, and the voyage charter.[1]  These categories are further characterized as either demise or non-demise charters: bareboat charters are demise charters; both time charters and voyage charters are non-demise charters.  The distinction between the demise and non-demise charters depends on the degree of control retained by the owner of the vessel.  In a demise charter, the vessel owner transfers full possession and control to the charterer, who in turn furnishes the crew and maintenance for the vessel (thus the term "bareboat").  Consequently, the bareboat charterer as a demise charterer is the

---

[1] THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW 381 (1987).

owner pro hac vice of the vessel for the duration of the contract. The demise charterer is therefore responsible in personam for the negligence of the crew and the unseaworthiness of the vessel.[2]

In contrast, the non-demise charter does not vest nearly the same degree of control in its charterer. A time charter only entitles the charterer to the use of the vessel for a specified time. The vessel owner retains primary possession and control. Although a time charterer does direct the destinations of the vessel,[3] he does not control the details of vessel operation required to reach those destinations. As a non-demise charterer, the time charterer is thus not liable for claims of negligence of the crew or for the unseaworthiness of the vessel. But the time charterer may be liable in that capacity for its own negligence.[4] A voyage charter is a contract to use a vessel for a specified voyage or series of voyages.[5] In the instant case, it is clear that Arco was a time charterer and neither a bareboat nor a voyage charterer. In addition, Arco is the owner/operator of both the platform from which Forrester embarked onto the crewboat and the dock onto which he disembarked from the vessel.

---

[2] Id. at 382.

[3] Id.

[4] Graham v. Milky Way Barge, Inc., 811 F.2d 881, 893 (5th Cir. 1987).

[5] SCHOENBAUM, supra note 1, at 382.

ANALYSIS

A. Standard of Review

On appeal, Arco challenges both the district court's legal determination that it owed a duty to Forrester as a time charterer and the various factual findings supporting the finding of negligence. Forrester, in turn, challenges the district court's finding that he was contributorily negligent. Whether a time charterer owes a duty to a passenger/subcontractor is a question of law that we review de novo. The remaining factual issues are reviewed for clear error.

B. Theories of Recovery

In its opinion, the district court relied on two related theories of recovery: (1) the time charterer is liable for its negligence in conducting its own affairs as a time charterer and (2) Arco, as a time charterer, owed a duty of care to Forrester as its passenger. In his brief, Forrester adds that Arco, as owner/operator of both the platform and the dock, owed him a duty of safe ingress and egress to and from the vessel. We review each contention in turn.

1. District Court Opinion

The two theories of recovery relied on by the district court are interrelated. It is axiomatic that for a time charterer to be liable for its own negligence, it must first owe a duty of care. Here, the district court concluded that a duty of care was owed because of Forrester's status as a passenger. Undeniably,

our case law establishes that:

> In this circuit, the standard of care owed to passengers on a ship, including their embarkation and disembarkation, has variously been stated as a "high degree of care," as a "duty of . . . ordinary care," "as a reasonably safe means" of boarding and leaving the vessel, as a duty of "reasonable care," and "as a duty of reasonable care under the circumstances." Despite the various formulas enunciated in these cases a review of the facts and the standards of care shows that shipowners, relatively speaking, are held to a high degree of care for the safety of passengers.[6]

A review of the cases dealing with this standard of care, however, reveals that this duty is owed <u>by the owner of the vessel</u>, whether that be the actual owner or the owner <u>pro hac vice</u>. We find no case, and none has been cited to us, in which a time charterer is held liable for the safe embarkation or disembarkation of passengers, absent special circumstances.

Our decision in <u>Moore v. Phillips Petroleum Co.</u>[7] makes clear this distinction between a time charterer and a vessel owner. Although that case was decided in the context of the Longshore and Harbor Worker's Compensation Act, the reasoning is equally applicable to cases such as this, involving general maritime negligence principles. In <u>Moore</u>, we explained that the "traditional time-charterer duties" are limited to the vessel's commercial activities, such as designating the cargo and the routes and destinations, specifically noting that the vessel owner retains responsibility for providing "a reasonably safe

---

[6] <u>Smith v. Southern Gulf Marine No. 2, Inc.</u>, 791 F.2d 416, 419-20 (5th Cir. 1986).

[7] 912 F.2d 789 (5th Cir. 1990).

6

means of access for those boarding or leaving the vessel."[8]

Having reaffirmed that a time charterer does not owe a per se duty of safe access to a passenger, we next examine whether, under the instant circumstances Arco may have altered the traditional allocation of duties and assumed control of (and thus responsibility for) the disembarkment proceedings, as the district court found.[9] The district court stated, without explanation, that "[t]he evidence presented shows that the Arco Production Supervisor [Smith] was basically in charge of the disembarkation procedure and in charge of instructing his employees and sub-contractor passengers as to Arco's safety rules and regulations." The only evidence that Arco, through Smith, took control of the disembarkment proceedings and thereby exceeded its traditional time charter role, is that Smith motioned the passengers to the back of the ship and that, through employees like Smith, Arco customarily gave its employees and subcontractors general safety instruction. In addition, there is deposition testimony that Smith felt a personal obligation towards his men.

Even accepting these facts as true,[10] we find them

---

[8] Id. at 792.

[9] See Kerr-McGee Corp. v. Ma-Ju Marine Servs., Inc., 830 F.2d 1332 (5th Cir. 1987).

[10] There is, however, some inconsistency between finding that Smith exercised control over the disembarkment procedures and the court's subsequent findings that the captain of the vessel instructed the passengers (including Smith) to remain on board and wait until the vessel docked. This indicates that the captain was supervising the disembarkment.

insufficient as a matter of law to show that Arco usurped the traditional control that is retained by the vessel's crew in a time charter situation.  Smith's gesture to the passengers is at best  minimal participation in disembarkment.  Moreover, Arco's general safety instructions to its employeesSQinstructions presumably given by most employersSQdoes not by themselves prove that Arco exceeded its traditional role of time charterer.  Consequently, Arco assumed no safe access duty to the vessel's passengers.  It could not, therefore, be responsible for their injury in the process of disembarking.

2. <u>Arco's Ownership/Operation of the Platform and Dock</u>

Forrester advances an additional theory of recovery in his brief, to wit: As owner/operator of the platform and dock, Arco owed a duty of safe ingress and egress to Forrester.  To strengthen his position, Forrester notes that Arco's employee directed the captain where to dock the vessel for disembarking.

Again, we are aware of no cases in this circuit holding a platform owner liable for the safe eventual disembarkment of a subcontractor's employee back at the onshore dock.  The only relevant case provided by Forrester is <u>Moore</u>, discussed above.  In that case, Moore transferred himself from the vessel to the platform (not the onshore dock) by swinging from a rope attached to a beam on the platform.  When the rope broke Moore fell to the platform and was injured.  In addressing the question of liability, we stated:

> [T]he traditional allocation of duties between
> employer/platform owner, time charterer and vessel

8

owner places liability for harm on the party that is most directly responsible for the dangerous condition that caused the harm. . . . [E]ither ODECO as platform owner-employer, Co-Mar as vessel owner, or both were responsible for Moore's egress from the vessel to the fixed platform. As the platform owner, ODECO as employer controlled the rope's physical condition and knew or could be charged with knowledge that the rope was not safe for the purpose intended. As the vessel owner, Co-Mar was responsible for access to and from its boat. The rope swing is an artificial means of ingress and egress to and from the fixed platform. The responsibility for the hazards it presents falls either on the platform owner-employer or on the vessel owner or both but, in any event, outside of the traditional duties of a time charterer.[11]

The instant case, however, is distinguishable from Moore in several respects. First, Forrester was not moving between the platform and the vessel, but between the vessel and the dock. Moore stands for the proposition that some duty is owed by a platform owner to its employee for his safe movement between the vessel and the platform when the artificial means of ingress is part of the platform. There is, however, no support for a broad rule that Arco, as platform owner, owes a duty to an employee to deliver him safely to the dock. Second, in Moore, the worker was a common law employee of the platform owner, thereby implicating the duty of an employer to provide a safe work place for its employees. Even if we were to view the independent contractor, Forrester, in the same light as a common law employee of Arco, however, his work station was not the dock but the platform, so the Moore duty does not attach to Forrester's disembarkation at the dock.

---

[11] Moore, 912 F.2d at 792.

9

The issue of whether Arco as owner/operator of the dock owed a duty of safe ingress and egress to Forrester is controlled by our decision in <u>Florida Fuels, Inc. v. Citgo Petroleum, Corp.</u>, 6 F.3d 330 (5th Cir. 1993). In <u>Florida Fuels</u>, the barge OSPREY berthed at a dock owned and operated by Citgo Petroleum Corp. (Citgo). <u>Id.</u> at 331. After securing the barge, Carl Authement was ascending a ladder to return to the barge when he fell and struck his head on the pier, and drowned. <u>Id.</u> Authement's parents and children filed a maritime suit against Citgo. <u>Id.</u> The issue in <u>Florida Fuels</u> was whether Citgo owed a duty to Authement to provide a means of access between the dock and the vessel. <u>Id.</u> at 332. We concluded that maritime law imposed no duty on a dock owner to provide a means of access to a vessel for the vessel's crew members. <u>Id.</u> at 334. We further concluded that the only duty established by Louisiana law was to provide a dock which was reasonably safe. <u>Id.</u> Because there was no defect in the dock itself, we ruled that Citgo did not breach its duty to maintain a reasonably safe premises as a matter of law. <u>Id.</u>

Forrester's argument that Arco, as the dock owner, owed him a duty of safe ingress/egress from the vessel to the dock is, therefore, meritless. The only duty that was owed to Forrester was the duty, under Louisiana law, for Arco to provide a dock which was reasonably safe. Here, the district court expressly found that the passengers did not wait long enough for a gangway to be put in place. Accordingly, there was no defect in the dock that caused the accident; rather, it was the hurried and

10

undisciplined nature of the disembarking procedureSQlegally under the control of the vessel's crewSQthat caused the problem.

In addition, Forrester insists that Arco was negligent because it directed the vessel to the east dock, which was lower than the west dock. According to Forrester, had the crewboat docked at the higher west dock, there would have been a shorter distance for Forrester to jump. This argument is meritless, as it presupposes that Arco knew that the passengers would refuse to wait for the gangplank, instead choosing, in the words of the crewboat captain, to jump "[l]ike [lemmings] off a cliff."

IV

CONCLUSION

As the basis of its decision in favor of Forrester, the district court held that a time charterer owed a duty of due care to its passengers. Being unable to find support in law for that proposition, we cannot agree that such a duty exists. Equally unavailing is Forrester's argument that Arco owed him a duty of safe ingress and egress by virtue of its ownership of the platform and the dock. Although these facts do create some duties of due care, they do not create a duty of safe access to passengers disembarking at a dock from a non-owned vessel that has taken them from the platform to shore. As Arco is under no duty to provide safe access under these circumstances, whether as time charterer, dock owner, or platform owner, Arco could not have acted negligently toward Forrester. For the foregoing reasons, we must therefore reverse the district court's judgment

11

in favor of Forrester, and remand for dismissal.  Thus, the judgment of the district court is REVERSED and judgment is RENDERED in favor of Arco, dismissing Forrester's claims with prejudice.