IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-20466
_____

LINTOTT RESOURCES, INC.;
BRIDAS P.I.C. S.R.L.,

                                                    Plaintiffs-Appellants,

versus

PETROLEO BRASILEIRO, S.A.,
also known as Petrobras International
S.A., (Braspetro); FROTA NACIONAL
DE PETROLEIROS, also known as
Fronape; PETRO-TANKERS, S.A.,

                                                    Defendants-Appellees.

_____

Appeal from the United States District Court for
the Southern District of Texas
(USDC No. H-98-CV-4293)
_____

March 11, 2002

Before HIGGINBOTHAM, DEMOSS and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

    In this maritime suit, appellants Lintott Resources, Inc. and Bridas P.I.C. S.R.L.,

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

plaintiffs below, appeal the district court's summary judgment. Appellants sued appellees Petroleo Brasileiro, S.A. and its shipping arm, Frota Nacional de Petroleiros (collectively Petrobras) to recover for the loss of cargo aboard the M/V Lancer and related salvage expenses. The district court concluded that Petrobras, who had time-chartered the vessel, was entitled summary judgment based on its successful assertion of the fire defense, as set out in the Fire Statute, 46 U.S.C. § 182, and extended to carriers such as Petrobras by the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. § 1304(2)(b).

The Fire Statute exempts vessel owners from liability for loss or damage to cargo "by reason or by means or any fire happening to or on board the vessel, unless such fire is caused by the design or neglect of such owner." The COGSA provision exempts carriers from liability for losses arising or resulting from "[f]ire, unless caused by the actual fault or privity of the carrier." "It has long been held that the COGSA fire exemption and the Fire Statue exemption are the same, except that COGSA extends to the 'carrier,' not just the 'owner' as in the Fire Statute." Westinghouse Elec. Corp. v. M/V Leslie Lykes, 734 F.2d 199, 205 n.3 (5th Cir. 1984) (Brown, J.) (citation omitted).

The summary judgment evidence indicates that the Lancer was destroyed when flammable gases in one of the vessel's tanks exploded, which resulted in additional tank explosions and fire aboard the vessel. Smoke is visible in a videotape before the first explosion. The first explosion apparently occurred in a tank which had previously held toluene, a flammable hydrocarbon. The river pilot aboard the Lancer at the time of the incident recalled that the first explosion was accompanied by a bluish flame, and that

2

about twenty seconds later a second explosion occurred, accompanied by a large ball of flame and black smoke.

Appellants argue that a distinction should be drawn between damage from the explosions and damage from the fire. We agree with the district court that on these facts no such distinction should be made. The fire defense "is to be applied broadly, and the exception to the defense for fires 'caused by the design or neglect of such owner' must be viewed narrowly." Id. at 208. Giving the Fire Statute a broad reading, the incident in question is properly characterized as a fire. Fire is simply a rapid chemical reaction between oxygen and some other, flammable, material. See Cargo Carriers, Inc. v. Brown S.S. Co., 95 F. Supp. 288 (W.D.N.Y. 1950) (quoting testimony of chemist that "[i]t is the reaction of oxygen with carbon, hydrogen, nitrogen, phosphorus, and so forth, which we see as combustion. . . . When it reaches the point where it glows or it is a flame, then we call it fire."). The initial and subsequent explosions on the Lancer were, legally and as a matter of chemistry, the rapid and violent combustion of flammable gases and oxygen which are properly characterized as fire. See EAC Timberlane v. Pisces, Ltd., 580 F. Supp. 99, 116-17 (D.P.R. 1983) (finding Fire Statute and COGSA's fire defense applicable to loss of vessel caused by explosion of detonator caps "almost simultaneously accompanied by an immense wall of fire"), aff'd, 745 F.2d 715 (1st Cir. 1984). Appellants cite no authority which convinces us otherwise. While we can agree with appellants that heat damage is not necessarily the same as fire damage, see The Buckeye State, 39 F. Supp. 344, 348-49 (W.D.N.Y.) (holding that damage to corn caused by

3

electric lights was damage caused by heat without fire), the damage in the pending case was properly characterized as fire damage.

Appellants appear to argue that even if the fire defense is applicable and they had the burden of proving carrier negligence, they presented sufficient evidence to the district court to defeat summary judgment. The fire defense is not a complete defense; rather, it shifts the burden to the shipper to identify "the cause of the fire, and also to establish that the cause was due to the 'actual fault or privity' of the [c]arrier." Leslie Lykes, 734 F.2d at 206. The defense is broadly applied, as stated above, and the shipper's "burden is not satisfied by proving that the fire was caused by the negligence of the master or crew. 'Neglect of such owner' means personal neglect of the owner, or, in case of a corporate owner, negligence of its managing officers or agents." Id. at 206-07.

We conclude that appellants failed to raise sufficient evidence to avoid summary judgment. FED. R. CIV. P. 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). Under modern summary judgment practice "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511 (1986) (citations omitted).

4

Appellants offered the expert testimony of Dr. Bland, who opined that the cause of the initial explosion had "not been identified with any degree of precision." He went on to state:

> It appears most likely, therefore, that the explosion was initiated by something falling through one of the aft two tank cleaning hatches, both of which appeared to have been open. In my view, it must be considered bad practice to leave any tank opening, to a tank that is not gras free, in the open position, if that tank is not being washed or gas freed. It should be noted that on this vessel, because of the absence of an operational inert gas system, explosive vapour/air mixtures were likely to form, from time to time, within cargo tanks and some flammable gas was likely to be discharged, at times, onto the tank deck.

Insofar as Bland believes that hatches should have been closed, on this record such a failure amounts at most to crew negligence that is not imputed to the carrier. As explained above, such crew negligence is not imputed to the vessel owner under the Fire Statute. Leslie Lykes, 734 F.2d at 206. As further explained above, carriers like Petrobras are subject to the same fire defense as vessel owners, and we therefore can see no reason that crew negligence of the sort claimed by the expert should be imputed to a carrier. Petrobras was the carrier because it time-chartered the vessel, and it offered undisputed evidence that as the charterer it did not employ or supervise the Lancer's crew. Further, exempting carriers from liability for crew negligence in these circumstances is consistent with the law of our circuit recognizing, in other contexts, that a time charterer's traditional duties extend to designating cargo, and determining the vessel's route and general mission, but that a time charterer is generally not held responsible for dangerous conditions on board the vessel or crew negligence. See

5

Hodgen v. Forest Oil Corp., 87 F.3d 1512, 1520 (5th Cir. 1996); Forrester v. Ocean Marine Indem. Co., 11 F.3d 1213, 1215 (5th Cir. 1992); Moore v. Philips Petroleum Co., 912 F.2d 789, 791-92 (5th Cir. 1990).

As for the "absence of an operational inert gas system," Bland goes on to explain that the Lancer had an inert gas system, but that under relevant Convention for Safety of Life at Sea (SOLAS) regulations, there was no requirement that the vessel be fitted with an inert gas system during the voyage in issue, given the cargo that was being transported. In our view, Bland's statement regarding the lack of an operating inert gas system was insufficient to defeat the summary judgment motion.

Appellants separately argue that the district court erred in refusing to allow them to recover from Petrobras salvage expenses incurred in removing cargo from the vessel because of the "New Jason" clause. We agree with the district court that this clause in the bills of lading provides that if the carrier has a valid statutory defense, the shipper "shall contribute with the carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods." Since Petrobras was entitled to the COGSA fire defense, Petrobras was not obligated to indemnify appellants for salvage costs they incurred in removing cargo from the vessel.

Finally, appellants ask us to reconsider the holding of Leslie Lykes, 734 F.2d at 207, that the carrier has the burden of proving that it exercised due diligence as a prerequisite to invoking the COGSA fire defense. Even if, writing on a clean slate, we

6

were inclined to agree with appellants, one panel of this court cannot overrule the decision of another panel.  FDIC v. Dawson, 4 F.3d 1303, 1307 (5th Cir. 1993).

AFFIRMED.