# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-60066
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

October 1, 2014

Lyle W. Cayce
Clerk

KENNETH W. BARRON,

Plaintiff - Appellant

v.

BP AMERICA PRODUCTION COMPANY,

Defendant – Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:12-CV-177

Before DAVIS, CLEMENT, and COSTA, Circuit Judges.

PER CURIAM:[*]

Kenneth W. Barron appeals the district court's grant of summary judgment in favor of BP America Production Company ("BP") and dismissal of Barron's claims under the Jones Act, 46 U.S.C. § 30104, and general maritime law for unseaworthiness and negligence. For the following reasons, we AFFIRM the district court's rulings.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-60066

I.

On July 12, 2010, Barron was injured while working on the *Big Wave*, a vessel owned by John Fraleigh. The *Big Wave* was performing monitoring and cleanup work as part of BP's Vessels of Opportunity ("VoO") Program when Barron suffered his injuries.[1] Specifically, Barron alleges that the vessel was transiting the Mississippi Sound from Cat Island, where it was inspecting beaches, to Bayou Caddy when he was thrown from his seat due to the *Big Wave*'s excessive speed. Barron suffered vertebral burst fractures in his spine.

Barron filed suit in federal district court on June 7, 2012, bringing claims under the Jones Act and general maritime law against BP, which his complaint identified "as the owner *pro hac vice* of the *Big Wave*" and his "Jones Act employer on the date of the accident." On December 30, 2013, the district court granted BP's motion for summary judgment, dismissing the action with prejudice. It held that the charter party between BP and Fraleigh was unambiguously a non-demise time charter, and "[b]ecause BP was a non-demise charterer of *Big Wave*, it is not liable for Plaintiff's claims under the Jones Act or for the unseaworthiness of the vessel." As for Barron's negligence claim under general maritime law, the court held that Barron did not present any competent summary judgment evidence or testimony that supported his claim that BP was negligent in its capacity as *Big Wave*'s time charterer. Barron appeals.

II.

We review a district court's grant of summary judgment de novo, applying the same standard on appeal as that applied below. *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014). Summary judgment is proper "if the

---

[1] Following the April 20, 2010 explosion on *Deepwater Horizon*, BP designed this program to provide local boat operators the opportunity to assist with various response activities.

2

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

"We review a district court's evidentiary rulings for abuse of discretion." *United States v. Sanders*, 343 F.3d 511, 517 (5th Cir. 2003).  "With respect to expert testimony offered in the summary judgment context, the trial court has broad discretion to rule on the admissibility of the expert's evidence and its ruling must be sustained unless manifestly erroneous."  *Boyd v. State Farm Ins. Cos.*, 158 F.3d 326, 331 (5th Cir. 1998).

## III.

Barron argues that the district court erred in its interpretation of the charter party between BP and Fraleigh as a non-demise charter.  This is relevant because this court has held that "the bareboat charterer as a demise charterer is the owner *pro hac vice* of the vessel for the duration of the contract" and "therefore responsible *in personam* for the negligence of the crew and the unseaworthiness of the vessel." *Forrester v. Ocean Marine Indem. Co.*, 11 F.3d 1213, 1215 (5th Cir. 1993).  But a "non-demise charterer . . . is . . . not liable for claims of negligence of the crew or of the unseaworthiness of the vessel." *Id.*

"[A] time charterer 'who has no control over the vessel, assumes no liability for negligence of the crew or unseaworthiness of the vessel absent a showing that the parties to the charter intended otherwise.'" *In re P & E Boat Rentals, Inc.*, 872 F.2d 642, 647 (5th Cir. 1989) (quoting *Mallard v. Aluminum Co. of Canada, Ltd.*, 634 F.2d 236, 242 n.5 (5th Cir. 1981)).  Barron argues that BP actually "controlled" the *Big Wave* and that, under a proper interpretation of the charter party, BP assumed liability for crew negligence and the vessel's unseaworthiness.  We reject both contentions.

Article 15 of the charter party, entitled "CHARTER NOT A DEMISE," provides that "[n]othing stated in this CHARTER is to be construed as demise of the VESSEL to CHARTERER.  VESSEL OWNER shall at all times remain responsible for the navigation of the VESSEL, acts of pilots, tug vessels, crew, and all other similar matters as if trading for its own account."  Relevant to BP's alleged control at the time of Barron's injury, Article 3 provides that "[t]he decision to proceed on a trip in the face of adverse or changing weather or sea conditions shall be the sole decision of the VESSEL OWNER or the designated master."  Finally, Article 24 serves as a merger clause, stating that "[t]his CHARTER cancels and supersedes all prior negotiations, representations or agreements, both written and oral."  Because the charter party unambiguously establishes BP as a non-demise time charterer, the district court correctly rejected Barron's attempts to introduce parol evidence to the contrary.[2]

We hold that the Master Vessel Charter Agreement unambiguously establishes that BP was not a demise and that the vessel owner maintained responsibility for the vessel.  We thus affirm the district court's grant of summary judgment in favor of BP on Barron's claims under the Jones Act and for unseaworthiness.

Barron also appeals the district court's grant of summary judgment against him on his negligence claim under general maritime law.  Pleaded in the alternative to his Jones Act and unseaworthiness claims, Barron alleged that BP "breached its duty of reasonable care to [Barron] and was willful[ly] and grossly negligent" by (1) "operating [the *Big Wave*] at excessive speed in the face of dangerous and closely spaced waves;" (2) "placing [Barron] in a

---

[2] Even accepting Barron's evidence that (1) BP "directed" the oil spill response and containment efforts, (2) required vessel owners to maintain radio contact, (3) required training prior to participation in the VoO Program, and (4) directed the fleet back to port on the day of Barron's injury, this at most establishes that BP coordinated response activities and does not raise a genuine factual dispute that BP was the *Big Wave*'s owner *pro hac vice*.

position of peril given unfavorably dangerous sea conditions;" and (3) "encountering steep closely spaced waves at a high rate of speed." As explained above, any negligence resulting from the *Big Wave* being driven at excessive speeds cannot be attributed to BP. We thus ask only whether, in directing the vessel back from Cat Island, BP breached its duty of reasonable care by "placing Barron in a position of peril given" the weather and the *Big Wave*'s size.

In granting BP's motion for summary judgment on this claim, the district court held that Barron "ha[d] not presented any competent summary judgment evidence or testimony tending to demonstrate that BP acted negligently by purportedly utilizing an undersized vessel." We agree.

On July 29, 2013, Barron filed his response in opposition to BP's motion for summary judgment, attaching an affidavit by Fraleigh that was executed on July 16, 2013. In relevant part, the affidavit states that he "was told by BP representatives that because of its size [the *Big Wave*] would be used close to shore because its size made it unsuitable for open Gulf waters" and that "[t]o access Cat Island . . . [he] had to run across open, unprotected waters of the Mississippi Sound." The affidavit later opined that the *Big Wave* "should not have been directed to run over 20 miles of open seas to an island 8 miles off shore in the shallow, open waters of the Mississippi Sound, which are prone to produce such changed conditions in a very short time interval."

Based on the content of his affidavit, we hold that the district court correctly excluded Fraleigh's testimony as an inadmissible lay opinion. Under Federal Rule of Evidence 701, which governs opinion testimony by lay witnesses, "testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Determining whether the *Big Wave* should have operated in the Mississippi Sound when Barron was injured requires "scientific, technical, or other specialized knowledge" of boats, the Mississippi Sound, and the weather conditions of the Gulf of Mexico beyond what is known by the average person.

Barron never designated Fraleigh as an expert or attempted to show that he was qualified to testify in such a capacity. The district court did not commit manifest error in excluding his testimony. Fraleigh's affidavit was executed after the discovery and expert designation deadlines had passed. And Barron does not explain his failure to identify Fraleigh as an expert witness. We thus hold that the district court did not manifestly err in excluding Fraleigh's affidavit, and affirm the district court's grant of summary judgment in favor of BP on Barron's negligence claim under general maritime law. *See Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007) ("[The] exclusion of expert witnesses 'is particularly appropriate' where the party has 'failed to provide an adequate explanation for their failure to identify their expert within the designated timetable.'").

## IV.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of BP and its dismissal of Barron's action with prejudice.